PETER MILROY v. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

**Contracts:** USAGE. Where a contract permitting a shipper to go with his stock and return free of charge does not specify the route, the return must, if there are two routes operated by the carrier, in the absence of any usage to the contrary, be made by the shorter way.

SAME. If there is a usage permitting him to return over either route, and it is known to the shipper when the contract is made, it will be presumed to be a part thereof.

SAME. While the express terms of a contract cannot be varied by usage, and while usage which is contrary to law is ineffectual, it is permissible to show that, by usage, a contract providing for the free return of a stock shipper, which names no route, allows him to travel over either of the several routes, operated by the carrier who issued the contract.

COURT AND JURY: *Establishing usage.* In Iowa a usage is not negatived, as matter of law, because the evidence as to its existence is in conflict.

*Same.*    Such conflict should go to the jury, under proper instruc-
tions, as to how far such usage, if the jury finds it established,
should control the contract.

**Practice:** SPECIAL AND GENERAL VERDICTS.    A verdict in favor of
a passenger wrongfully ejected from a railway train, will not be
set aside, though the jury specially finds that no excessive force
was used, as alleged in the complaint, where the action is not
based upon the force alone, but also upon the wrongful ejection.

*Appeal from Delaware District Court.*—Hon. Fred
O'Donnell, Judge.

Thursday, May 14, 1896.

Action at law, in which plaintiff seeks to recover
damages for being wrongfully ejected from one of
defendant's trains.    Trial to a jury, and judgment for
plaintiff, and defendant appeals.—*Affirmed.*

*A. L. Bartholomew, Bronson & Carr,* and *W. J.
Knight* for appellant.

*Welsh & Welsh, Yoran & Arnold,* and *Powers, Lacy
& Brown* for appellee.

Deemer, J.—Plaintiff is a stock shipper, and in
the year 1887, resided at Hopkinton, in Delaware
county.    In September of that year, he shipped two
cars of stock from the place of his residence, over
defendant's line of road, to the town of Defiance, in
Shelby county,—a point a considerable distance west
of the town of Hopkinton.    A stock contract was issued
by the defendant to the plaintiff, which provided for
the transportation, of the stock to its destination,
and also provided for the free passage of one man
going with the stock to the place of its destination,
and returning to the point from which the shipment was
made.    The material parts of the contract are as follows:
"From Hopkinton, Iowa, to Defiance, Iowa.
"Parties actually in charge of and accompanying

within-named stock, must write their own name in ink here.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."Peter Milroy.

"* * * The above named is entitled to return pass Defiance to Hopkinton, Iowa.

"S. W. WHEELER, per A."

It seems that defendant had two lines of road from Hopkinton to Defiance,—one *via* Monticello, Anamosa, and Paralta, and the other *via* Monticello, Oxford Junction, Martelle, and Paralta. The following diagram will best explain the situation:

The route from Hopkinton to Paralta, *via* Ana-
mosa, is twenty-six and six-tenths miles shorter than
the one by way of Oxford Junction.   The cars con-
taining plaintiff's stock (he being with them) were
taken by way of the Anamosa route; and on the third
day of October, 1887, the plaintiff left Defiance, to
return to Hopkinton, taking a through train destined
from Council Bluffs to Chicago.   About sunrise next
morning he reached Marion, and instead of there
changing cars, and taking a train destined from Cedar
Rapids to Monticello, he continued on the Chicago
train, and rode on through Paralta, intending to get
off at Oxford Junction, and there take a train to his
home.   Shortly before the train reached Martelle, a
station a few miles east of Paralta, the conductor of
the Chicago train asked plaintiff where he wished to
go, and called for his ticket.   In response to this, plaint-
iff stated his destination and produced his stock con-
tract.   This the conductor refused to recognize, and
he demanded of plaintiff the regular fare from Paralta
to Oxford Junction.   Plaintiff refused to accede to the
demand, and was ejected from the train at Martelle.
After remaining at Martelle for about thirty minutes,
he boarded a west-bound train, arrived at Paralta in a
short time, and there alighted, and took the regular
Cedar Rapids train, *via* Anamosa, for his destination.
He reached Monticello an hour or two later than if he
had been permitted to go *via* Oxford Junction, as he
had intended.   This action is brought to recover
damages sustained by reason of the ejection of plaint-
iff from the Chicago train.   It is claimed by the
plaintiff that he had the choice of routes on his
return pass, and that the conductor of the
Chicago train wrongfully ejected him, that the
conductor used more force and violence than was
needed to eject him from the train, and that by rea-
son thereof, he has been seriously and permanently

injured. The defendant, in answer, claimed that it had the right to eject plaintiff from its train (and that it used no more force than was necessary in so doing), for the reason that it was plaintiff's duty to return by the route over which he went; that, under his contract, it was his duty to get off the Chicago train at Paralta, or at some point west of that; and that he was wrongfully on the train after it passed Paralta. On the issues so joined, the case was tried to a jury, which returned a verdict for plaintiff in the sum of one thousand dollars. The lower court reduced the amount to six hundred and sixty-six dollars, and for that sum rendered judgment. The court instructed the jury, in substance, that, while the return pass did not name the route over which plaintiff should return, yet it was his duty, in the absence of proof of custom or usage to the contrary, to take the shorter route, and return *via* Anamosa. But it also said, that if defendant, by general usage and custom, permitted persons holding tickets, or stock contracts, such as plaintiff had, to go over either route, without extra charge, then such usage or custom became a part of the contract, and plaintiff was justified in going by way of Oxford Junction, and the defendant had no right to put him off the train. Other instructions were given, with reference to what evidence was necessary to sustain this custom and usage, to some of which we will hereafter refer. These instructions, to which we have specifically referred, were not excepted to, and they, therefore, became the law of the case.

It is said by appellant, (1) that there is no such issue presented; (2) that there is no sufficient evidence to establish any such custom or usage; and (3) that, if it ever existed, it did not enter into plaintiff's contract, because he had no notice thereof.

Now, without setting out plaintiff's numerous pleadings, it is sufficient to say, that we think he did

plead a custom, and that evidence to establish it was properly admitted.

As to the appellant's second contention, it is well to look first to the instructions given by the court, with reference to the subject of usage and custom, before considering the evidence introduced to support it. These were as follows: "(12) By the term 'general custom,' is meant the general way of doing some particular thing,—the usual way of doing such thing. To establish a general custom in reference to any particular thing, or way or manner of doing such thing, it must be made to appear from the evidence that such custom was generally and uniformly extended to all persons, under like circumstances and conditions, and that the same is notorious; that is, well understood. So if, in the case at bar, it does not appear from the evidence that all persons holding tickets or passes from points west of Paralta to Hopkinton, were allowed to take their choice of line, either by Anamosa or Oxford Junction to Hopkinton, then the general custom in question in this case is not established." "(25) A custom or usage governing a question of legal right cannot be proved by isolated instances, but should be so certain, uniform and notorious that it must probably have been understood by the parties as entering into the contract. The burden is upon the plaintiff to prove that such a custom existed, by a preponderance of testimony; and, if you should find that he has failed to establish such a custom by a preponderance of testimony, then, upon that branch of the case, you should not consider it further as having any bearing upon the case, in making up your verdict." Neither of these instructions were excepted to, and they will be treated as a correct exposition of the law. It is to be observed, in passing, that the parties and the court below used the words "custom" and "usage" as

synonymous, and not according to their strict legal meaning. Technically speaking, there is a wide distinction between a usage of trade and a common law custom; for a custom is something which has, by its universality and antiquity, acquired the force and effect of law in the particular place or country in respect to the subject-matter, to which it relates, and is ordinarily taken notice of without proof (*Wilcox v. Wood*, 9 Wend. (N. Y.) 349), whereas a usage is simply a mode of dealing in a particular locality, or among persons in a particular business or trade, and it derives its binding force from the supposed or established knowledge of the persons engaged in the particular traffic at the place or in the trade to which it relates. The theory of usage and custom, as used by the court in its instructions, rests upon the presumption that the parties, in making their contract, did so with the intention that the usages of the place and of the railway company should be regarded as a part of their contract, and not upon the premise that the custom had the effect of a local law. The plaintiff produced many witnesses to prove the general, uniform, notorious, and certain practice of the railway company to allow persons holding tickets, passes, or stock contracts to choose either route in going from Hopkinton and Monticello to points on the main line west of Paralta, without extra charge. These witnesses professed to know what the usage was in this respect, and many of them gave instances to enforce their statements. True, there were a number of witnesses for defendant, some of whom denied that there was any such custom; and others in the defendant's employ, who might have known it, if it had existed, testified that they had no knowledge of any such usage. Now, while a few courts have held that a usage or custom cannot be established by a single witness, and others have held that it cannot be shown by

a single witness if his testimony be contradicted, and still others have held that it cannot be established if there is a substantial conflict in the evidence, no matter what the number of witnesses, yet we think the true rule is that if plaintiff has produced evidence which, when fairly and reasonably considered, would prove the alleged custom, the question then becomes one of fact, for the jury, under proper instructions from the court, and that the mere fact of a conflict in the testimony does not, of necessity, and as a matter of law, negative the alleged custom. See *Hughes v. Stanley*, 45 Iowa, 622; *Dickinson v. City of Poughkeepsie*, 75 N. Y. 66; *Farnsworth v. Chase*, 19 N. H. 535. Any other rule would defeat almost every custom sought to be established. One fact established upon the trial is not to be lost sight of: A person who had a pass, was carried on the Chicago train, upon which plaintiff was riding, to Oxford Junction, and from there he went to Monticello, all being done without objection on the part of any of the defendant's employes. We think there was sufficient evidence to take the question to the jury. It is also said that the contract with plaintiff could not have been made with reference to this custom, for he had no notice thereof. This contention is based almost wholly upon an alleged declaration, made by plaintiff with reference to his rights under his contract and his knowledge of the usage. But we find, on turning to the record, that plaintiff testified that he knew of the custom when he made the contract; and the presumption obtains that, if he did know of it, it became a part of his contract, the same as if he had expressly assented to it. The jury evidently believed the plaintiff, and we cannot interfere.

II. Appellant contends that plaintiff cannot recover because he alleged that his injuries were due to the excessive force used by the conductor in ejecting

him from the train, and the jury specifically found that no excessive force was used. We do not find that this question was presented to the lower court, and, if it had been, there is no assignment of error to raise it here. Defendant did not, in the lower court, move for judgment on the special findings, and did not except to any of the instructions, except the fifteenth and nineteenth, and these are not seriously complained of on this appeal. Moreover, if the question did fairly arise, we are not prepared to say that there was any error. The plaintiff was entitled to recover, if he was wrongfully ejected from the train, and the violence used to effectuate his removal in such a case, might be considered in aggravation of his damages. His action was not predicated upon excessive force alone, but upon his wrongful removal from the train, and he was not required to prove more than was needed to establish a case.

III. It is claimed that the plaintiff's contract was plain and unambiguous, and that under it certain legal rights and duties arose, and that neither the contract, nor the obligations which the law creates, can be varied by usage or custom. It will be noticed that the stock contract does not specify the route plaintiff should take. It calls for transportation from Hopkinton to Defiance, and return, over defendant's lines of road. Testimony as to a usage or custom allowing a passenger to elect which one of two he would select, would not vary or contradict the language of the contract. It merely attached an incident to it, and supplied conditions which in no manner conflicted with, or contradicted what was written. The law imposed certain obligations, with reference to time, care, etc., and it may be, in the absence of any custom or usage to the contrary, required plaintiff to take the shorter route. This was, practically, the theory adopted by the court below,

and we are satisfied of its correctness. It is conceded that an express contract cannot be contradicted or varied by proof of a custom. And it is also true that a custom or usage must not be contrary to law. But the custom relied upon in this case, did not vary the contract, nor give a different legal effect to the instrument from what the common law would have given. The usage, if proved, was not contrary to the general law of the land, but an exception to the ordinary rule of performance. If such customs should be rejected because they establish something different from the law, then they could not be proved in any case; for, if they were not different, they would be a part of the law. It may be said, however, that defendant has not contended that the custom was illegal. We think the court correctly submitted the question of usage to the jury.

IV. Appellant argues that the verdict is contrary to the twenty-fifth instruction above quoted. We have already said, that there was sufficient evidence on the question, to take the case to the jury, and will add nothing further.

V. Complaint is made of some of the questions propounded by plaintiff's counsel. It is said that they call for opinions, instead of facts, and that in some instances the witnesses were not competent. We do not think the objections are well founded. All parties treated the words "custom" and "usage" as synonymous, and the witnesses were asked as to, and gave evidence with reference to, the usage of the defendant company. Most if not all of them spoke from actual experience, and all said they knew what the usage and custom was. It was perfectly competent for witnesses to state the facts with reference to the usage or custom, but how far such usage should modify or control the contract or the law was for the court. *Holmes v. Whitaker* (Or.)

31 Pac. 705; Lawson, Usages & Cust., section 55; *Haskins v. Warren*, 115 Mass. 535. There was no error here.

VI. Appellee was permitted to prove by a witness, in rebuttal, that one Price, a conductor on the Anamosa train, said that plaintiff's contract was as good as wheat, and that, if he was in Milroy's place, he would see why he was put off the train. It is insisted that this was error. It appears that the conversation between Price and plaintiff was called out by defendant in an attempt to show that plaintiff knew there was no such custom as claimed. On re-examination of plaintiff he was permitted, without objection, to state the whole conversation, and he gave it just as the witness did who was produced in rebuttal; so that there was no prejudice, in any event. After this, however, Price gave his version of the conversation, but denied that part of it last above referred to. Plaintiff, in rebuttal, then introduced the witness whose testimony is objected to. We think there was no error.

VII. Lastly, it is said that the damages are excessive. While they are quite large, in view of the actual physical injuries sustained, yet, because of the various other elements of damage which may be considered in such cases, we do not feel justified in interfering. We discover no prejudical error, and the judgment is AFFIRMED.