C. F. THAYER, Appellee, v. THE SMOKY HOLLOW COAL COMPANY, Appellant.

Master and Servant:   SAFE PLACE TO WORK:   EVIDENCE OF CUSTOM
1   In an action for injury received in a mine, evidence of custom and usage as to whether it was the duty of the master or servant to care for the safety of the place of work is not inadmissible as varying a rule of law, or, in the absence of stipulations, any contract relation between the parties.

Proof of Custom.   Evidence of a custom is admissible, though
2   not pleaded, on the question of a duty growing oat of the custom.

Custom:   PROOF OF:   NOTICE.   In an action by a servant for injury
3   received in a mine it is competent for a witness, who shows

himself qualified, to state a custom or usage of the business where it is material, and, when shown, the master is presumed to have knowledge thereof.

Custom: PROOF: PLEADING. In an action by a servant for an injury received in a mine it is competent to show the custom with respect to examination by the master, as bearing on the measure of care required of plaintiff, though not pleaded.

Evidence: FALLING OF SLATE IN MINE ENTRY: CONCLUSION. In an action by a servant for injuries received in a mine by the fall of slate from the roof of the entry, it is improper to interrogate a witness as to the length of time when slate would fall after becoming loose "under the conditions existing in the entry," where the conditions are not disclosed.

Pleadings: EVIDENCE: FAILURE OF PROOF. In an action for injuries from a fall of slate in a mine entry, plaintiff alleged that it was defendants duty to inspect the roof but failed to charge negligence in respect thereto, the only allegation of negligence being a failure to repair and protect the roof. *Held*, that under the pleadings, evidence as to the time within which slate would fall after becoming loose without showing the time when defendant discovered the defect, was insufficient to make out a cause of action.

Custom: NEGLIGENCE: INSTRUCTION. In an action for damages caused by the fall of slate from the roof of a mine entry, the court instructed that evidence had been introduced tending to prove the custom as to the duty of looking after the safety of the roof, but that the same should not be considered as tending to show want of negligence on the part of plaintiff; also that evidence had been offered tending to prove a custom requiring workmen to look after the safety of the roof but that the same should not be considered as showing want of negligence on the part of defendant. *Held*, erroneous in that it deprived the defendant of the benefit of its evidence as to custom, and also as directing the jury not to consider this evidence either as negativing defendant's negligence or tending to prove want of negligence on the part of plaintiff. This error is not cured by another instruction that if the duty of inspection and repair devolved on plaintiff he could not recover, and if on defendant plaintiff must show negligence before he can recover.

Refusal of Instructions. Refusal of requested instructions embodied in those given by the court, is not error.

*Appeal from Monroe District Court.*—HON. T. M. FEE, Judge.

WEDNESDAY, OCTOBER 7, 1903.

ACTION at law to recover damages for personal injuries received by plaintiff, resulting from a fall of slate from the roof of an entry in the defendant's coal mine. The defendant denied liability for the injuries, and on trial to a jury plaintiff received the verdict on which judgment was rendered, and the defendant appeals.—*Reversed.*

*Ryan, Ryan & Ryan* and *Clarkson & Bates* for appellant.

*N. E. Kendall* for appellee.

DEEMER, J.—Plaintiff, while engaged with another in driving an entry in defendant's coal mine, received the injuries of which he complains through a fall of slate from the roof of said entry. He charges the defendant with negligence in the following language: "That it was the duty of the defendant to provide and erect in such entry suitable and necessary safeguards against accidents to those employed in and about said mine." "The said injuries were received by him wholly as the direct and proximate result of the carelessness and negligence of the defendant. That said carelessness and negligence consisted in allowing and permitting said cross entry K to become and remain in an unsafe and dangerous condition, and in failing and omitting to properly support the roof thereof with timbers or otherwise, as required by law, rendering it reasonably secure against a fall of slate." "That plaintiff had no knowledge whatever of the dangerous condition of said entry or the roof thereof, but he alleges that the defendant was well aware thereof, or, in the exercise of reasonable diligence, might have discovered the same." After the evidence was all adduced, the plaintiff amended his petition as follows: (1) He alleged that on the 15th day of October, 1900, the defendant was in absolute and unqualified charge, control, and super-

vision of said cross entry K at the place where the plaintiff was injured, and that plaintiff had no charge, control, or supervision thereof whatever; that plaintiff's only duty in connection with said entry was at its face, more than forty-five feet from the place of the injury; that no duty devolved upon him to inspect, examine, or secure the roof of said entry at the place where he was injured, but the duty so to examine, inspect, and secure said roof by timbers or other supports was incumbent upon the defendant; that plaintiff had a right to rely and did rely upon the defendant to inspect and examine said roof, and to timber support and secure the same in a proper and sufficient manner to prevent falls of slate therefrom."

The entry in which plaintiff was injured was a lateral one, running east and west at right angles to the main one, and had been extended something like fifty feet from the mouth thereof, by plaintiff and one Williams at the time the accident occurred. It was intended to break through or reach a cross section at a distance of something like sixty feet from the main entry, but this break through had not yet been made. When plaintiff went to work, the entry had been extended something like fifteen feet from its mouth by Williams alone. This entry ran east and west, and the bottom had been taken up and the sides cut along for a distance of from twenty-five to thirty feet, to make room for the mules which were to operate the cars, and iron rails had been laid by employes of the company for cars to run upon for a distance of from eight to ten feet from the mouth of the entry, when plaintiff received his injuries. Connected with these iron rails which had been laid by the company's employes were wooden ones, laid by plaintiff and his co-employe, for the purpose of removing the coal by cars from the face of the entry as they proceeded with their work. Plaintiff was injured on Monday, and on the Saturday before, the company had its employes in the entry cutting along the ribs preparatory to taking up the

bottom, and they had worked back into the entry for the distance of thirty-five feet.  These employes had also put some timbers in the entry, and a driver was going in and out removing the coal.   On the day of the injury plaintiff had gone to the mouth of the entry to get a coal car, which had been switched onto the iron track, and left there for the men who were at work at the face, in order that they might remove the coal therefrom.   He went behind the car, gave it a push, and when he had arrived at a point variously estimated at from six to ten feet from the entry mouth, was struck by a large piece of slate weighing one thousand five hundred or more pounds, which fell from the roof of the entry.   The entire piece which fell was within fifteen feet of the mouth of the entry and at a place where plaintiff had done no work.   It was also over the iron rails which had been laid by the defendant company after the bottom of the entry had been taken up.   All this plaintiff's evidence tended to show, and the jury was justified in finding these to be facts.

One of the close questions in the case was, of course, the defendant's duty to look after the safety of the place where plaintiff received his injuries.   If plaintiff were making the place himself, and was solely responsible for its creation, condition, and care, then, of course, the rule as to the duty of the master to furnish his employe with a safe place in which to work does not apply.   On the other hand, if defendant had assumed the care of the place, or was required to inspect and care for it, then it was liable if it failed to exercise ordinary care and diligence in looking after the safety of its employes, who were required to use the place in going about their work.   The rules of law which apply to such cases are very well understood, and particularly well explained in *Union Pac. R. Co. v. Jarvi*, 53 Fed. Rep. 67 (3 C. C. A. 433); *Kelly v. Fourth of July Mining Co.*, 16 Mont. 484 (41 Pac. Rep. 273).   But the exact time when a master's duty begins is

not fixed by any arbitrary rules.   We have already held
that evidence of custom and usage is ma-
terial on this question, for such evidence
does not vary either an established rule

*1. SAFE place to work: evidence of custom.*

of law, or, in the absence of express stipulations, any
definite contract relations between the parties.   *Tay-
lor v. Star Coal Co.*, 110 Iowa, 40.   Appellant's conten-
tion that such evidence relieves the employe of a stat-
utory duty is unsound.   It is a species of reasoning in a
circle, which is at all times dangerous of adoption.   If the
employe was in control, then he was under a statutory
duty to prop the roof and to properly timber the entry;
but, if this was a duty devolving upon the defendant by
reason of custom or otherwise, then the obligation rested
on it, and not on its employe, who was without authority
or control.   This matter has already been decided against
appellant in *Corson v. Coal Co.*, 101 Iowa, 224, as well as
in the *Taylor Case, supra.*

It is also argued that, as no custom was pleaded, evi-
dence thereof was inadmissible.   This is the rule where it
is sought to modify or change the conditions of a contract,
but it does not obtain in cases where duty
grows entirely out of custom.   *Henry v. R.*

*2. PROOF of custom.*

*R. Co.*, 66 Iowa, 52; *Eller v. Loomis*, 106 Iowa, 276, relied
upon by appellant, is not in point.

Further, it is said that it is incompetent for a witness
to state a custom.   Perhaps in some cases this may be true.
But here, as in *Milroy v. R. R. Co.*, 98 Iowa, 188, all
parties treated the words "custom" and
"usage" as synonymous, and it is everywhere

*3. CUSTOM: proof of: notice.*

held competent for a qualified witness to state the usage
of a business when that becomes a material inquiry.
When one shows himself competent to testify to a usage,
his statement is not an opinion, but a fact, which is com-
petent.   If he gives a mere opinion, without any found-
ation in fact, he, of course, does not state a fact.

Again, it is said there is no showing that defend-
ant had notice or knowledge of the custom.   This is not
necessary.   The custom or usage being shown by com-
petent evidence, the defendant is presumed to have had
knowledge thereof.   This is fundamental.

What we have said disposes of all contentions with
reference to testimony as to usage, save that, defendant
contends it was not allowed to prove an entirely different
custom from that relied upon by plaintiff.   Some of the
rulings on the questions propounded were erroneous, but
defendant suffered no prejudice therefrom, as it was finally
allowed to prove all it was entitled to.

II.   Witnesses were allowed to state, over defendants
objections, the custom with regard to the examination and
inspection of roofs of entries in mines.   This is claimed to

4. CUSTOM:       be erroneous, because irrelevant to any issue
proof:
pleading.        in the case.   Referring back to the pleadings,
it will be seen that this contention is entirely without
merit.   The petition explicitly charges that it was defend-
ant's duty to do so.   Without such allegation, the evidence
was proper as bearing on the measure of care required of
and exercised by the plaintiff.

III.   Evidence was adduced tending to show that a
piece of roof such as fell and injured plaintiff would likely
hold four or five days after it first became loose.   Such

5.  EVIDENCE:     testimony from persons familiar with the
falling of
slate in         mine, and who had frequently observed con-
mine entries.   ditions, was undoubtedly admissible, under
proper issues, to make out a case.   Some of the questions
propounded offended against the rule, in that, instead of
calling for a general rule, plaintiff's counsel attempted to
localize it, and to have the witnesses take into considera-
tion facts and circumstances which were not proven, but
rested in the minds of the witnesses, and were given such
weight as the witness alone saw fit to impose.   A sample
question will suffice.   These questions were propounded:

"Q. Well, take such an entry as this was, and such a roof as it was, what do you say as to the probable length of time slate of that character of those dimensions usually drop to the bottom, after it becomes loose? (Defendant objects as incompetent, not the subject of expert testimony, and inadmissible for any purpose, and an attempt to put the witness into the jury box, calling for a conclusion, and purely speculative. Overruled, and defendant excepts). A. That would depend upon the conditions of the air in the mine. Q. Suppose that there was no air course in the entry at all? (Same objection by defendant last above. Objected to. Overruled, and defendant excepts.) A. That is so, being no circulation would cause moisture, caused by sweating. Q. Take conditions as they were in that entry, of which you were familiar with all of them. (Defendant makes the same objection as to the last preceding question. Overruled, and defendant excepts.) A. Oh, a few days." What conditions were referred to is not disclosed. Moreover, the witness was asked to usurp the function of the jury, and to answer for them one of the vital questions in the case. Under no possible theory can such an interrogatory be sustained. *Alvord v. Alvord,* 109 Iowa, 113.

Another point in connection with this evidence is that under the issues it was not sufficient to make out a case. Careful examination of the pleadings will disclose that, while plaintiff charged that it was defendant 's duty to examine and inspect the roof of the mine, and proved that it was the custom of owners to take charge of and care for such roofs as the one in question, there is no allegation charging defendant with negligence in failing to make such inspection, or in failing to discover defects in the roof. The sole allegations of negligence are in allowing the roof to become out of repair, and in failure to prop and timber the roof as required by law. Plaintiff proved the fall of the slate,

6. PLEADINGS: evidence: failure of proof.

injury to his person, custom as to care of the entry, and likelihood of the roof to hang from three to six days after it became loose.   Evidence as to how long a rock will hang may be competent as bearing on the question of failure to make repair, if there be other evidence regarding the time when the defect is actually discovered; but such evidence does not of itself furnish any solution of the question of negligence in failing to make repair.   Had there been any charge of negligence in failing to make inspection, then the evidence, from those having experience in this kind of work, as to the time a rock will hang after it begins to detach itself from the roof, and as to the means of discovering the defect, would be both competent and relevant, for it would tend to prove the exact point in issue.

There is a manifest distinction between failure to repair and failure to inspect.   The one may suggest the other, but this is not necessarily so.   Negligence is only to be predicated upon failure to repair when there remains time after discovery to remedy the defect.   Failure to inspect may be negligence although there remains no time for repair.   Duty may, in such cases, demand other precautions than repair. As there was no allegation of negligence in failing to inspect, we do not think the evidence to which we have referred, unaccompanied by any testimony as to when the condition of the roof was actually discovered by the defendant, was sufficient to take the case to the jury on this proposition.   This testimony simply suggests an inference from which other inferences may or may not be drawn. We shall assume that witnesses have testified that a piece of slate similar to that which fell on plaintiff will usually hang from three to six days after it becomes loose.   From this we may assume that this particular piece of slate was loose for this length of time before it fell.   Now, this is no proof that defendant knew of the defect; and it is practically conceded that it did not drive the entry itself.

Without knowledge of the defect, no duty devolved upon plaintiff in the matter of making repairs. But it is said that from the evidence to which we have referred it should be inferred that defendant had knowlege of the defect. This it seems to us is pushing the doctrine of presumption at least one step too far. As there is no direct allegation of failure to inspect, we must assume that defendant did its duty in that respect. The charge is failure to repair, and the proof is the fall of a roof which customarily holds for from three to six days after it begins to break loose. From this testimony we are asked to infer not only that this particular piece of roof was loose for from three to six days, but that defendant knew it was loose, because it might have discovered it had it made proper inspection; that, having discovered it upon inspection, it failed to exercise proper care in the repair of the roof. Entirely too much is left to conjecture and inference in this syllogism. *Wheelan v. C. M. & St. P. R. R. Co.*, 85 Iowa, 169; *Asbach v. C. B. & Q. R. R. Co.*, 74 Iowa, 248; *Bothwell v. R. R. Co.*, 59 Iowa, 194. A presumption can arise only from facts actually proven by direct evidence. A presumption is not a legitimate foundation for a presumption. If this were not true, there would be no limit to conjecture. Remembering that failure to inspect is not made a ground of negligence, we think there was not sufficient evidence to take the case to the jury on the issue of defendant's failure to repair. We are not to be understood as holding that other allegations of negligence were not sustained by the evidence. Defendant, if in charge and control of the entry where plaintiff was injured, was under a statutory duty to securely prop and support the roof and entries under its control (Code, section 2491), and for failure to do so it may have been negligent. We have referred to the matter of evidence in order that the issues may be corrected on a retrial.

IV.   The court, in its twelfth instruction, said: "(12) The plaintiff has introduced evidence tending to prove the custom of mines in this district and in defendant's mine,

7. CUSTOM: and tending to show by that custom that the negligence: instruction. duty and responsibility of looking after the safety of the roof of such entries as entry K was on the 15th day of October, 1900.   This evidence was introduced and admitted for that purpose, but must not be considered by you as showing and tending to show the absence of negligence on the part of the plaintiff contributing to the injury complained of.   Evidence has been introduced by the defendant tending to prove the custom of the defendant's mine or in the defendant's mine, that the miner should or did look after the safety of the roof of such entries as entry K was on the 15th day of October, 1900, and that the evidence should not be considered by you as showing or tending to prove the absence or want of negligence on the part of defendant with regard to said roof."   This is so clearly erroneous that little time need be given it.   There can be no actionable negligence in the absence of a duty owing from him who is charged with the wrong. Unless the defendant owed plaintiff some duty, then, no matter what it did or did not do, it was not guilty of actionable negligence.   From one point of view the instruction is correct.   But from the other it is entirely incorrect and misleading.   If it were not defendant's duty to look after the roof, but was the duty of the miner, then, no matter what defendant did or omitted to do, it was not negligent.   This idea the instruction distinctly negatives, and it was, therefore, erroneous.   Moreover, the instruction, fairly construed, deprived the defendant of the benefit of its evidence as to custom.   Taking this instruction with others given in the case, it might perhaps be possible for a trained lawyer to sustain it by divorcing duty from negligent acts (which it is somewhat difficult to do, because the duty often furnishes the measure of care

required); but when embodied in instructions given to a jury it is almost certain that the language will be misunderstood and misapplied. The instruction, on its face, is practically conceded to be bad, but it is claimed that it was cured by others. We do not think this is so. True, the court in another instruction said that, if the duty of inspection and repair devolved upon plaintiff, he could not recover, and that, if the duty devolved upon defendant, still plaintiff could not recover without showing some negligence either of omission or commission. But the trouble with the instruction as given is that the court told the jury that this evidence as to the custom should not be considered either as negativing defendant's negligence or as proving or tending to prove want or absence of negligence on the part of the plaintiff. We have already said that perhaps a trained mind might be able to harmonize these instructions, but to an ordinary layman they were certainly confusing and contradictory. Even lawyers sometimes forget that negligence is predicated upon duty, and that this duty, when discovered, furnishes the measure of care required. Following instruction twelve as given, the jury may well have believed that evidence as to custom had no bearing upon either the question of defendant's negligence or of plaintiff's contributory negligence, and, therefore, that, no matter if the evidence satisfied them that it was the custom of the miners to look after the roof where plaintiff was injured, still this had no bearing upon the ultimate question of negligence. We think the instruction should not have been given. The first paragraph of the instruction is not clear. It may have been misquoted; but as it stands it is unintelligible. The most that can be said of it is that a jury might well understand that, no matter what the evidence as to custom, it had no bearing on the question of plaintiff's contributory negligence. This is surely incorrect, and was manifestly prejudicial.

V.   Complaint is made of an alleged failure of the court to instruct on the question of waiver and assumption of risk.   The instructions asked by defendant with refer-

8. REFUSAL of ence to those issues, in so far as they are cor-
instructions. rect, were embodied in the charge as given, and defendant has no cause for complaint.   The rules on these subjects have been so recently considered that we need do no more in this connection than refer to *Sankey v. R. R. Co.*, 118 Iowa, 39.

Some other matters are argued, but as they are not deemed controlling, and are not likely to arise on a retrial, we do not consider them.

For the errors pointed out, the judgment must be and it is REVERSED.