THEODORE H. DOLAN, Appellant, v. DANBURY STATE BANK, Appellee.

FEBRUARY 5, 1929.

*Jepson, Struble, Anderson & Sifford* and *Strong & Seff*, for appellant.

*Henderson, Fribourg, Hatfield & Fribourg*, for appellee.

FAVILLE, J.—The appellant was engaged in the buying and shipping of live stock at the town of Danbury. He did his banking business with the appellee bank. His custom was to purchase stock from different persons and issue his checks therefor until he had accumulated a carload of stock, when he would ship the same to Sioux City, and give the bank a sight draft for said shipment, drawn on a commission house in Sioux City. The petition alleges that, on or about the 6th day of June, 1925, the appellant and the appellee entered into a contract whereby the appellee agreed to honor the appellant's checks to the amount of $1,500; and appellant contends that, notwithstanding said contract, the appellee refused to pay certain checks of the appellant's, and that he suffered damages as a result thereof. At-

tached to appellant's petition and made a part thereof is a certain written agreement, which is as follows:

"Agreement.

"This agreement made and entered into this 6th day of June, 1925, by and between the Danbury State Bank, Danbury, Iowa, party of the first part; and Theo. Dolan and E. T. Kelleher, parties of the second part, witnesseth: The said parties of the second part have this day issued to the Danbury State Bank, three notes of $500 each and which are to be held by said Danbury State Bank as a guarantee for the performance in good faith of said Theo. Dolan. Said Theo. Dolan being in the stock business at Danbury, Iowa, and in the purchase of stock for shipment gives checks on said Danbury State Bank. To cover such checks sight drafts are drawn on the commission firm when shipment is made and these three notes of $500.00 each are given said bank to guarantee them against any loss accruing from an overdraft in said account of Theo. Dolan or for the refusal of any commission firm to honor such drafts drawn on them and which are made payable to said Danbury State Bank. The Danbury State Bank is hereby authorized to collect on these notes at any time that a sight draft is dishonored.

"Danbury State Bank, Danbury, Iowa,
"By J. C. Jacobsen, Cashier.
"Theodore Dolan.
"E. T. Keleher."

In pursuance of said contract, three notes of $500 each were executed, and delivered to said bank. One of said notes was later credited to the account of Dolan, to cover checks issued by him. The other two notes remained in said bank at the time that the bank refused to cash two certain checks of Dolan's, aggregating $380, which refusal is made the basis of this action. Appellant's cause of action is predicated upon an alleged breach of said written contract.

I. The first question for our determination involves the construction of the written instrument entered into between the parties. If the written instrument is unambiguous, and its purport and intent may be gathered from the instrument itself, then, under familiar rules, parol evidence is not admissible to explain or vary its terms. Under such a condition, if it does not express

the true intent and purpose of the parties, and the oral agreement between the parties preceding it was different in essential elements from the written instrument, then appellant's relief is in a court of equity, to reform the instrument.

If, however, the instrument is ambiguous, the court would have a right to consider it in the light of the circumstances surrounding the parties at the time the instrument was executed, as bearing upon the purpose and intent of the parties, expressed in the written instrument. This is not to create a new contract or add new elements to an existing written contract, but to aid in the true interpretation of an ambiguous instrument. These rules are too familiar to require elaboration or citation of authorities.

In the instant case, the written instrument does not appear to be ambiguous. It speaks for itself. If the parties failed to incorporate therein other terms or obligations, relief must be sought in equity; but such separate terms and obligations cannot be incorporated into an unambiguous written instrument by parol, and relief sought for breach thereof, in this action at law. The writing involved herein appears to be in the nature of a unilateral contract. The bank did not bind itself by the terms of said instrument to do or perform any act. The three notes of $500 each the contract provides are issued to the bank "as a guarantee for the performance in good faith of said Theo. Dolan." There is then a recital of the facts with regard to the manner in which Dolan conducted his business: to wit, that he was engaged in the stock business and, in the purchase of stock for shipment, "*gives checks*" on said Danbury bank. It is then provided that, "to cover such checks, sight drafts *are* drawn on the commission firm when shipment is made." These recitals were statements of fact with regard to the manner in which the business of Dolan was transacted, but contained no covenant, agreement, or promise by either party. They contain no recitals as to what either party was to do in the future. Then follows the important part of the agreement with regard to the purpose for which said notes were given, and that is as follows:

"These three notes of $500 each are given to said bank to guarantee them against any loss accruing from an overdraft in said account of Dolan, or for the refusal of any commission firm to honor such sight draft drawn on them and which are made payable to said Danbury State Bank."

As expressed in the contract, the purpose of the execution and delivery of said notes to the bank was twofold: (1) To guarantee the bank against any loss accruing from an overdraft in the account of Dolan; and (2) to guarantee said bank against loss by refusal of any commission firm to have any sight draft drawn on them by Dolan and payable to the bank.

The bank assumed no obligation whatever on its part. It did not agree to permit Dolan to create an overdraft in said bank. It made no promise therein to honor Dolan's checks without having funds on hand deposited by Dolan with which to pay them. The written instrument obviously provided that, *if* the bank permitted Dolan to create an overdraft in said bank in the conduct of his business, the notes would be a guaranty to the bank "against any loss accruing" from such overdraft. There was, however, no promise in the written contract that the bank would permit any such overdraft, or would honor checks of Dolan to the amount of the three notes, to wit, $1,500, as contended by appellant. Of course, the bank would be legally bound to honor any checks drawn by Dolan on any account that he might have in the bank, but this guaranty was to protect the bank from any loss it might suffer in the event that an overdraft was created in Dolan's account. Such guaranty did not, however, bind the bank to grant to Dolan an overdraft to the amount of $1,500, or any other amount. No such promise on the part of the bank is expressed in the contract, nor can such promise be reasonably inferred therefrom.

The second purpose of the deposit of said notes with the bank, as expressed in said agreement, was that it was to guarantee the bank "for the refusal of any commission firm to honor such drafts drawn on them and which are made payable to said Danbury State Bank." This was a guaranty that, if such drafts were given to the appellee bank by Dolan and were refused by the commission firm, the said notes would stand as a guaranty to the bank for any loss that they might suffer by reason thereof. Nowhere in the written instrument is there any promise or agreement, expressed or fairly to be implied therefrom, that the bank would honor or pay checks of Dolan and permit him to create an overdraft thereby. The contract, construed as a whole, provided for the deposit of the three notes as a guaranty to the bank for the two purposes mentioned. One of said notes was

used to protect an overdraft, and the bank refused to cash other checks drawn on it by Dolan at a time when he had no deposit in the bank with which to pay the same. The contract did not require the appellee bank to honor such checks.

It is contended that the parties gave a practical construction to the instrument by reason of the fact that the bank did permit Dolan to create an overdraft, and used one of the notes with which to meet the same. But this was only doing the very thing that the instrument provided for. If an overdraft *was* created, then the notes could be used, under the guaranty, to protect the same. But this, however, did not evidence any intent on the part of the bank to permit Dolan to have an overdraft at any time he saw fit to create one. The fact that the bank permitted an overdraft in one instance and resorted to one of the notes, was not such a "practical construction" of the instrument as bound it to recognize that Dolan had a *right* to continue to draw checks and create further overdrafts.

The appellant offered parol testimony tending to show that, at the time of the execution of the contract, it was orally agreed that the bank would extend credit to Dolan and permit him to create an overdraft in the bank and would honor his checks drawn on said bank, even though said checks created an overdraft. This was an attempt by parol to incorporate into the written instrument a provision and promise that were not inserted therein. We do not regard the instrument as ambiguous. The trial court properly excluded the parol evidence offered by appellant, which would establish an entirely new contract for the parties, containing a distinct and separate promise which is not expressed in the written instrument. This was something very different from evidence to aid in the proper construction of an ambiguous instrument. It was virtually making a new contract for the parties. This, as we have shown, cannot be done, under the facts of this case. We therefore reach the conclusion that the written instrument was not ambiguous, and must be construed according to its provisions; and when it is so construed, the record fails to show that there has been any breach of said contract by the appellant, or that the appellee has any right of recovery thereunder. The action is at law, and the rights of the parties must be determined under the instrument as we find it to be.

It therefore follows that the order of the district court in directing a verdict.in behalf of the appellee is correct, and it is—*Affirmed*.

ALBERT, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.