MITCHELL ORLICH, doing business as ORLICH PRODUCE, Appellant, v. RUBIO SAVINGS BANK OF BRIGHTON, a corporation, Appellee.

No. 47472.

(Reported in 38 N. W. 2d 622)

August 5, 1949.

Siegers & Bedell, of Newton, and Arnold H. Myhra, of Colfax, for appellant.

Edmund D. Morrison, Jr., of Washington, for appellee.

OLIVER, J.—Maurice Weisz operated a produce business at Brighton, Iowa, under the name of Weisz Produce. He bought produce from dealers, processed it, and sold it in quantities to buyers in Chicago and elsewhere. He banked with defendant, Rubio Savings Bank of Brighton. Plaintiff, Mitchell Orlich, bought and sold poultry and eggs at Colfax, Iowa, under the name of Orlich Produce.

Counts 1 and 2 of plaintiff's petition allege that about June 3, 1946, defendant and Weisz orally agreed Weisz Produce would continue the produce business, would pay with checks drawn on defendant and would deposit all proceeds in defendant-bank and the bank would pay all such checks and if the Weisz Produce bank balance should be insufficient would finance such purchases by accepting demand notes of Weisz Produce; that both parties performed said agreement until April 11, 1947; that relying upon the agreement Weisz Produce bought from plaintiff four shipments of poultry and eggs and paid therefor with checks: Exhibit 2—April 3, 1947, $534.94; Exhibit 3—April 4, 1947, $891.31; Exhibit 4—April 7, 1947, $2808.54; Exhibit 5—April 8, 1947, $3013.50; that Weisz Produce thereafter sold the produce at a profit and deposited the proceeds in

defendant-bank; that plaintiff deposited his checks in First National Bank of Colfax and they were forwarded through Iowa-Des Moines National Bank & Trust Company, Des Moines and Federal Reserve Bank of Chicago to defendant-bank; that defendant in violation of its agreement with Weisz refused payment under the pretext the funds on deposit were insufficient and wrongfully appropriated the Weisz Produce account and set off the same to the payment of its claims; that this was a fraud upon plaintiff, was contrary to equity and good conscience and plaintiff should be granted equitable relief; that the court should construct and enforce a trust upon the proceeds received by defendant from Weisz Produce resale of plaintiff's produce and other funds received by defendant from Weisz Produce between April 1 and 11 and for judgment for the amount of the checks plus protest fees and general equitable relief.

Count 3 is based upon the theory defendant actually paid the checks Exhibits 2 and 3 to Federal Reserve Bank of Chicago and later wrongfully recalled the payment. The other counts are predicated upon the contention defendant failed to pay or return each check accepted or unaccepted within twenty-four hours after its receipt.

Defendant closed out Weisz Produce account April 11, 1947. Weisz disappeared, and was adjudicated a bankrupt.

I. The evidence relied upon by plaintiff to prove the bank entered into the pleaded contract or agreement to finance Weisz Produce is wholly circumstantial. Weisz dealt with no other bank. He was indebted to defendant on a time loan secured by a mortgage of the Weisz Produce plant and equipment. During the ten-month period in question the bank made Weisz Produce about sixty demand loans averaging several thousand dollars. Usually these were paid within a few days but one or more of them was outstanding most of the time. "These loans were based on the fact that he said he had checks coming from commission companies in Chicago, or elsewhere, or had produce in the process of delivery and the checks would be back to pay the notes in a short time * * *."

Weisz and his bookkeeper, Marston, frequently wrote checks in excess of the balance in the Weisz Produce account. If suffi-

cient deposits to cover these had not been made when they arrived by mail the bank would telephone Weisz Produce that a deposit of a certain amount was required and Weisz or Marston would make the deposit, either from the proceeds of sales of produce or from the proceeds of a demand loan made for that purpose. The records of the bank show no overdrafts but they do show about six instances where overdrafts were prevented by demand notes credited to Weisz Produce account one business day prior to the dates of the respective notes. Witnesses for the bank testified the discrepancies in the dates of the notes and credits were due largely to a delayed posting system employed by defendant. "It happened once in awhile when we had no cash letter the day before and checks came in and were opened in the cash letter in the morning that Mr. Weisz either deposited cash, checks or borrowed money before the books were balanced for the preceding day or before the posting was done on the green sheets. When that was done they were included as of the preceding day's business."

Weisz had no relations with the bank other than as a customer. He owned and operated a recently enlarged storage and produce plant which employed twenty to thirty people and deposited about $1,375,000 during the period in question. That he required and secured frequent loans to handle his commitments would not make suspect defendant's dealings with him. Nor was the use of demand notes to evidence the loans necessarily significant. They were well adapted for loans of a few days' duration while shipments of produce by Weisz Produce and payments by consignees were en route. True, there were some instances in which such notes were credited on the bank's books a day in advance of the respective dates on the face of the notes. It was defendant's practice that when checks arrived which would overdraw a customer's account he was telephoned and given an opportunity to cover them. Possibly the discrepancies in dates resulted from that practice. These advance credits may have indicated temporary overdrafts on such occasions. However, this would not furnish substantial proof of the agreement pleaded by plaintiff. Nor would it require the bank to permit other overdrafts. Canal Bank & Trust Co. v. Denny, 172

La. 840, 844, 135 So. 376, 377, states they were not under obligation to pay the checks "because they had heretofore been in the habit of allowing them to overdraw their account at times." See Dolan v. Danbury State Bank, 207 Iowa 597, 601, 223 N. W. 400. 9 C. J. S., Banks and Banking, section 342, page 688, states: "A custom of a bank to permit a depositor to overdraw may be discontinued by the bank at any time, in the absence of reliance thereon by a third person."

Although plaintiff points to some others, the foregoing are the main circumstances relied upon as showing the pleaded agreement that the bank would finance all purchases of Weisz Produce and pay all checks for produce. Opposed to this evidence is testimony of representatives of the bank that it had no such contract or agreement nor any agreement with reference to financing Weisz Produce or paying checks drawn on Weisz Produce account, if the funds in the account were insufficient. Plaintiff relies largely upon Pascoe v. Franklin County State Bank, 217 Iowa 205, 251 N. W. 63. Defendant cites Andrew v. Waterville Sav. Bk., 205 Iowa 888, 219 N. W. 53. In the Pascoe case there was direct as well as circumstantial evidence of the bank's agreement to finance the purchases of a customer who was also an officer and director. Here all the direct evidence was to the contrary and the circumstances were not inconsistent therewith. The trial court found plaintiff had failed to establish the contract or agreement pleaded by him. We conclude this finding was correct.

 II. Plaintiff contends the deposits by Weisz Produce of the proceeds of the resale of the produce secured from plaintiff were special deposits for the purpose of paying plaintiff's checks and defendant could not legally divert such deposits to any other purpose. We have already held the record does not show any agreement that defendant would finance purchases by Weisz Produce. Nor was there proof of any specific directions or agreement that any deposit or funds of Weisz Produce should be applied to this purpose. The deposits were general, not special, and were not limited to the purpose of paying for produce purchased from plaintiff. Andrew v. Waterville Sav. Bk., 205 Iowa 888, 219 N. W. 53; Bielen v. Central Nat. Bk. & Tr. Co., 224

Iowa 19, 27, 276 N. W. 25; Andrew v. Union Sav. Bk. & Tr. Co., 220 Iowa 712, 715, 263 N. W. 495; 9 C. J. S., Banks and Banking, section 274, page 562. Hence, the character of the deposits did not make wrongful their application to other obligations of Weisz Produce.

 III. Plaintiff contends defendant actually paid the checks Exhibits 2 and 3 to Federal Reserve Bank of Chicago and later wrongfully recalled the payment by withholding it from a subsequent remittance to that bank. Defendant-bank was not a member of the Federal Reserve System but Federal Reserve Bank sent items drawn on Rubio Savings Bank direct to that bank for collection and remittance. These were mailed to defendant-bank each banking day in a cash letter. Defendant-bank would remit by draft, returning such items as it did not pay and deducting from the draft accordingly. For form of cash letter see Leach v. Farmers & Merchants Sav. Bk., 207 Iowa 471, 220 N. W. 10.

The checks, Exhibit 2 for $534.94, and Exhibit 3 for $891.31, had been endorsed in blank by plaintiff and deposited in his account in First National Bank of Colfax. That bank endorsed and forwarded them to Iowa-Des Moines National Bank, Des Moines, which in turn endorsed and forwarded them to Federal Reserve Bank of Chicago, which on April 8, 1947, endorsed them and forwarded them by mail to defendant, Rubio Savings Bank, in a cash letter which contained items totaling $12,640.88, all of which were drawn upon defendant-bank. This cash letter reached defendant-bank April 10, 1947, at five p. m., and after banking hours. It was opened April 11, 1947.

While these checks were proceeding through channels to defendant-bank two checks for $6500 and $5000, respectively, made by Acme Farm Products Company to Weisz Produce and deposited by the latter in defendant-bank were en route through channels to the Chicago bank upon which the same were drawn. On April 7 and April 9 defendant was notified by wire that these Acme checks had been protested and were being returned to defendant. The protested Acme checks arrived by mail at defendant-bank April 11 and the letter containing them was

opened and its contents examined before the cash letter from Federal Reserve Bank was opened.

The balance in the Weisz Produce account was then $419.61. Had the protested Acme checks been then charged against Weisz Produce account it would have been overdrawn about $11,000. Defendant is not a large bank and the several representatives in active charge of its affairs were familiar with the various accounts.

Ella Luithly, defendant's teller and bookkeeper, serviced the mail April 11. She followed her practice of opening last the cash letter from the Federal Reserve Bank. This contained, among others, the two checks, Exhibits 2 and 3. She testified:

"I fastened them onto the Federal Reserve letter with a paper clip. I did that because I found in checking the ledger sheets that the Weisz Produce account didn't have enough to pay them. * * * The cash letter with the two checks fastened to it was laid aside on the counter. I then proceeded to go ahead and post the checks and deposits of persons in the bank, using the checks that came from the cash letter except these two and any other that might have been bad, and posted those checks on people's individual ledger accounts. Later that day we protested these two checks I had laid aside. * * * The notation '4-11-47, Ella Luithly, Notary Public' appears to be my writing. Later on someone put the protest on and the amount of fees."

The same day, April 11, defendant telephoned Weisz Produce and told Marston (Weisz was in Chicago) a deposit of $13,000 was required. Marston deposited $7991.01. Defendant then charged the two protested Acme checks to the Weisz Produce account and closed it. It showed an overdraft of $3097.84. Defendant held no unpaid notes of Weisz except those secured by the mortgage upon his plant and equipment. The same day, April 11, defendant returned by mail to Federal Reserve Bank, the tab or top portion of the cash letter, together with a draft in full payment of its items, including payment for the checks, Exhibits 2 and 3. This arrived at the Federal Reserve Bank April 12. The copy of the cash letter was stamped: "Paid April 12, 1947" and "Remittance Received April 12, 1947 Too Late For Clearings."

Saturday, April 12, defendant mailed to Federal Reserve Bank the tab of the cash letter received that day with draft therefor. From this draft was deducted the amount of the two checks, Exhibits 2 and 3. With the draft defendant enclosed the two checks with records and notices of protest. The letter reached the Federal Reserve Bank April 14, too late for clearings. The Federal Reserve Bank made no objection to the deduction.

Generally speaking, when a bank has credited for deposit paper drawn on another bank and it proves uncollectible it may charge it back to the depositor. But when a check is deposited in the bank on which it is drawn the bank may reject it or refuse to pay it or receive it conditionally, but if it unqualifiedly accepts the check for deposit it may not thereafter, in the absence of fraud or collusion, repudiate the transaction. 9 C. J. S., Banks and Banking, section 284, pages 590, 592; 7 Am. Jur., Banks, section 457; American Nat. Bk. v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310; Cohen v. First National Bank of Nogales, 22 Ariz. 394, 198 P. 122, 15 A. L. R. 701. And when a bank upon which a check is drawn receives it from another bank for payment, the sending by mail by the drawee bank of a valid draft therefor constitutes payment. Bank of Commerce v. Reis, 253 Ky. 648, 69 S. W. 2d 754; 9 C. J. S., Banks and Banking, section 349; 40 Am. Jur., Payment, section 85. The situation has been regarded the same as though the check had been paid in cash over the counter. Leach v. Citizens State Bank of Arthur, 203 Iowa 782, 785, 211 N. W. 522; Leach v. Iowa State Sav. Bk., 202 Iowa 894, 898, 211 N. W. 517.

Defendant pleaded a custom and usage of banks, recognized by Federal Reserve Bank, that payee banks return cash letters conditionally with full payment therefor and deduct uncollectible items from the draft for the cash letter of the next day. An officer of Federal Reserve Bank who testified on this point was asked whether Federal Reserve Bank permitted this. He answered, "I wish you would change 'we permit'—how can we prevent it? We raise no objection." He testified also, correctly, that some states permit this by legislation. See 20 Iowa L. Rev. 140. There was no such legislation in Iowa at that time and

we need not consider chapter 225, Acts of Fifty-third General Assembly, which was subsequently adopted.

An officer of defendant-bank testified it was defendant's common practice to pay Federal Reserve Bank in full for all checks sent it for payment each day and deduct for the bad ones the next day. However, the record is to the contrary. There are in evidence four cash letters and returns made between April 11 and April 15, 1947. These show approximately thirteen deductions for "ret. checks" and "ret. protested checks", each of which deductions, except for Exhibits 2 and 3, was made from the draft to Federal Reserve Bank for the current cash letter. In other words, these two checks are the only ones shown by the record during this period to have been paid Federal Reserve Bank in the draft with the return for the current cash letter and to have been deducted from the draft with the return for the following day. Hence it appears it was not the common practice of defendant-bank to pay Federal Reserve Bank conditionally or provisionally for bad checks one day and recall the payment by deducting the amount from the return made the following day. Usage is habitual or customary practice. Restatement of the Law, Contracts, section 245; Milroy v. Chicago, M. & St. P. Ry. Co., 98 Iowa 188, 194, 67 N. W. 276. Defendant seeks the benefit of a claimed custom without usage on its part. It is not entitled to this advantage.

The purpose of rules relative to conditional credits or payments is to give banks a reasonable opportunity to investigate the instrument and the condition of the account upon which it is drawn. Hence it has been held that when presentment is made over the counter where the opportunity for investigation precedes payment there is little reason for the application of such rules. First National Bank of Portland v. Noble, 179 Or. 26, 168 P. 2d 354, 169 A. L. R. 1426. No good reason appears why a drawee bank which has deliberately paid an innocent holder for a check the drawee knew was bad should be permitted to recall the payment on the plea it was conditional.

Defendant cites Goeman v. Live Stock Nat. Bk., 238 Iowa 1088, 29 N. W. 2d 528, and Bellevue Bank v. Security Nat. Bk., 168 Iowa 707, 150 N. W. 1076. Neither case involved the collec-

tion of a check payable by the bank. In the Goeman case a draft payable through the bank was forwarded for collection. In the Bellevue Bank case it was a note payable at the bank. In each case defendant bank received from the maker of the instrument a check based upon fraudulent deposits. In each the bank discovered the fraud, promptly canceled the credit and recovered the instrument the same day. In the Goeman case the conditional credit was never sent to the forwarding bank. In the other case the draft was canceled by wire before the Bellevue Bank knew of its existence. The Bellevue Bank case turned upon the finding The Security National Bank was misled by the fraud of the debtor. It may be observed a contrary result was reached in Security National Bank v. Old National Bank, 8 Cir., Iowa, 241 F. 1.

Defendant, Live Stock National Bank, in the Goeman case was the correspondent for many other banks. The items sent it were drawn upon various banks throughout the country which necessarily could not be handled expeditiously if returns from drawee banks were awaited. The decision was based upon a contract to credit items conditionally, as well as upon custom.

Neither cited case is here in point. In this case there was no fraud. Nor does defendant claim mistake or oversight. In argument it states: "The testimony shows they never intended to pay them or charge them against Weisz Produce. Instead they were 'noted' for protest the day they arrived." It is a sufficient answer that defendant deliberately paid the checks after examining Weisz Produce account and finding it insufficient. The circumstances overwhelm its contention that although its act in paying was voluntary and considered it did not intend the draft to constitute payment.

It is our conclusion the trial court erred in denying plaintiff recovery for the two checks, Exhibits 2 and 3, on Count 3 of his petition.

IV. Plaintiff contends defendant failed and refused to pay any of the checks or return them accepted or nonaccepted to the forwarder within twenty-four hours after delivery to it and is liable to plaintiff as acceptor under section 541.138, Code of Iowa 1946. We have already held defendant liable upon

checks, Exhibits 2 and 3, and need not consider this contention as applied to said checks. The record shows defendant caused Exhibits 4 and 5 to be protested and returned to Federal Reserve Bank within twenty-four hours after their delivery to defendant. Hence there is no factual basis for this contention of plaintiff. The trial court correctly so held. The legal questions presented need not be determined.

The cause is affirmed except as to Count 3 of plaintiff's petition, as to which it is reversed and remanded with instructions for the entry of judgment in favor of plaintiff and against defendant upon the checks, Exhibits 2 and 3, with interest and costs. The costs on this appeal are ordered taxed one half to appellant and one half to appellee.—Affirmed in part, reversed in part and remanded.

All JUSTICES concur except MANTZ, J., not sitting.