EDITH MURRAY v. E. ANGELA SCULLY,
Appellant.

**Division One, June 2, 1914.**

1. **EVIDENCE: Presumption of Divorce Arising from Second Marriage: Fault of Wife: Dower.** Presumption may not be based upon presumption; and therefore the record of the husband's second marriage is not admissible, in an action to assign dower, to prove that his former wife, who now seeks dower, had been divorced from him for her own fault or misconduct. The showing of the husband's second marriage raises a presumption of divorce, thus relieving him from the imputation of bigamy, but no further presumption arises from it that such divorce was granted for the wife's wrong and that thereby she lost her right to dower.

2. **ADMEASUREMENT OF DOWER: Set-off for Taxes Paid by Purchaser.** In a widow's suit for assignment of dower, the purchaser of land from the husband in his lifetime is not entitled to have deducted from the dower interest the widow's portion of taxes due upon the land and paid by the purchaser.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird*,
Judge.

AFFIRMED.

*Thomas J. Smith* for appellant.

The court erred in refusing to admit in evidence the record of the marriage of Thos. J. Fry, the former husband of the plaintiff, to L. J. Farris, and the other evidence offered by defendant tending to show the fact of said marriage, and that they lived together openly as man and wife in Bates county, Missouri, from the time of said marriage in 1891 until his death in 1906 as tending to show that Thos. J. Fry had been divorced from the plaintiff, and if divorced, necessarily, on account of her fault, the presumption

of innocence of Fry of the offense of polygamy being stronger than the presumption that the plaintiff, having been once married to the defendant, remained his lawful wife. Waddingham v. Waddingham, 21 Mo. App. 609; Johnson v. Railroad, 203 Mo. 381; Maier v. Brock, 222 Mo. 74.

*W. O. Atkeson* and *Silvers & Silvers* for respondent.

(1)   When the plaintiff showed her marriage to T. J. Fry, that he was seized of an estate of inheritance in the land, during the marriage, and that he died in 1906, she made a prima-facie case.   It then devolved on the defendant to show that her right of dower had been lost.   Cozier v. Hinchey, 143 Mo. 203.   (2)   To show that plaintiff's right of dower had been barred, the defendant relied solely upon an effort to prove that Fry had been married a second time in 1891.   Proof of this fact, defendant maintained, would raise a presumption that the first marriage, with plaintiff, had been dissolved.   But it would not raise the presumption that his wife was the guilty party.   To defeat plaintiff's claim of dower, it devolved on the defendant to show not only that Fry had been divorced from her, but that in the divorce proceeding the plaintiff was adjudged the guilty party.   Hunt v. Thompson, 61 Mo. 148; White v. Ingram, 110 Mo. 483; Scales v. Scales, 65 Mo. App. 292.

BROWN, C.—This action was instituted in the circuit court of Bates county, Missouri, in the fall of 1909, for the admeasurement of dower **Admeasurement** and assessment of damages for its alleged **of Dower.** withholding, in the south half of the southwest quarter of section 26, and the south half of the southeast quarter of section 27, and the northeast quarter of section 34, and the northwest quarter of section 35, all in township 40, range 30, in

Bates county, Missouri. The plaintiff filed an amended petition at the February term, 1910, on which the case then went to trial. In this she stated that she was lawfully married to Thomas J. Fry, and that during the said marriage he was the owner and seized and possessed in fee simple of said land, and that she had never joined in any conveyance of, nor otherwise released her dower in the same. That afterwards, in the State of Colorado, she procured a decree of divorce from said Fry on account of his fault, and an order of the court therein changing her name to Edith Murray; and on December 4, 1894, said Fry made a deed conveying his interest in said land to the defendant. That he died in 1906. She asked that her dower be assigned and for all proper relief. The defendant answered denying all the allegations of the petition except that Thomas J. Fry did own some interest in the land; that he conveyed that interest to defendant by deed in fee simple, with covenants of general warranty of seizin and for further assurance; and that he died. She also stated:

1. That Thomas J. Fry and John Fry, Jr., his brother, were partners and at the time the former conveyed the land to defendant it was being used and held as partnership property, and was so recognized by them prior to the time of his alleged marriage to plaintiff; that while it was so held and used by them F. C. Ferrell recovered judgment against them in the Jackson County Circuit Court, under which the land was all sold, and purchased by S. S. Mathews, to whom the defendant paid $4197.58 in satisfaction of his claim on account of the title acquired through said purchase, and as a part of the purchase price of the land from Fry.

2. That Thomas J. Fry acquired the land from his mother, Maria S. Fry, in 1885, and to secure a portion of the purchase price made a deed of trust to secure the payment to her of $9000, ten years thereafter, with six per cent interest per annum, which recited that

the debt so secured was for the purchase price of said land; which the defendant was compelled to and did pay at the time of her purchase.

3.   That she also paid $61.39 in taxes which were a lien on the land when she purchased it.

That all these sums were paid by her in good faith without any knowledge or information that plaintiff had or claimed any right or interest in the land.

"That prior to the time of the marriage of Thomas J. Fry to Lydia Fry, who joined with him in the deed to defendant, he was lawfully divorced from the plaintiff herein for her fault, if in fact he was ever lawfully married to her."

A reply denied all the affirmative allegations of the answer.   On the trial before a jury it was developed in evidence and undisputed, that the plaintiff, whose name was Missouri J. Porter, was married to Thomas J. Fry, March 16, 1882, and lived with him as his wife on the tract of land in controversy for about eighteen months and to the winter of 1883, during which time one child was born of the marriage who resides in Longmont, Colorado, where the plaintiff, at the time of the trial, had been teaching for eighteen years as principal of a ward school.   Plaintiff left her husband in the winter of 1883, and has not remarried, but since going to Colorado in 1885 she has been known both there and in her old home in Bates county, as Edith Murray, which name she adopted at that time.

The record shows that upon her cross-examination as a witness she produced and identified a document marked "Exhibit A."   She was then asked upon cross-examination the following question: "Are you the Missouri J. Fry who brought in this court a suit for divorce against Jeff Fry?"   The plaintiff's attorney objected on the grounds that there was no evidence that any such suit had been brought and that it was incompetent and irrelevant.   The defendant's attorney then made the following statement:

"I have two reasons, and one is I want it for the purpose of the identification of this witness as to whether or not she is the same party; and we want to prove that along about 1883 or 1884 suit was brought in this court, which was pending, heard, and adjudicated against her; and that will be for the purpose further along of basing an objection to this decree that is offered (Exhibit A) to show where the jurisdictional fact occurred; to show that the court out there was without jurisdiction, and therefore was without power to render any judgment."

The court said: "For the present I am inclined to think that the objection is good." To which ruling the defendant excepted. The record does not further disclose what was in the Exhibit A referred to. The plaintiff was then identified by witnesses, including the recorder of deeds of Bates county, who produced the record of her marriage to Thomas J. Fry. Upon the cross-examination of the same witness the defendant offered the record of the marriage of Thomas J. Fry, Butler, Bates county, to Mrs. L. J. Farris of the same place, on November 24, 1891. The plaintiff objected to the evidence as incompetent, irrelevant and immaterial; and because this marriage constituted no defence to plaintiff's action for dower. Defendant's counsel then explained as follows: "My purpose is this: that the plaintiff in this case will absolutely fail to show that she was ever divorced from T. J. Fry. We offer to show here that this same T. J. Fry was in this county on the date named here, the 24th day of November, 1891, married to Lydia J., or Lydia I., or L. I. Farris; that from or after that date he continued to live with her in this county and she was known and recognized as his wife, and he as her husband. And this we think is competent especially under the case of Waddingham v. Waddingham, reported, I think, in the 24th Mo. App., as tending to show a divorce of T. J. Fry from the plaintiff in this case, on the ground

of presumption of innocence." Plaintiff's counsel then made the further objection that if Fry was divorced, defendant had it within her power to bring the record to show that he was the innocent and injured party, and his subsequent marriage was not the best evidence nor evidence of that fact. The court said: "I do not see how presumption of the lawfulness of his second marriage should affect or raise the presumption that he was the innocent and injured party, so as to deprive his former wife of dower rights. The objection will be sustained for the present. It may be that it can be made relevant, but I do not know finally. I cannot admit it on that ground on the presumption of innocence because it does not prove that he is the innocent and injured party." The defendant excepted. The plaintiff then offered, from the records, deeds showing the title of Thomas J. Fry through mesne conveyances from one Robert T. Richardson and his possession thereunder, all of which was admitted by the court against the objection of defendant made on the following ground: "I understand there is no such thing as showing title by adverse holding or title by possession or anything of that kind until you first show the title has emanated from the general government." The defendant duly excepted.

These deeds show the Richardson title through John P. Huston and wife and William McNeilly to have passed to John Fry and from him to Albertus Fry, Thomas J. Fry, Martin L. Fry and Maria S. Fry, who constituted a partnership under the firm name of Fry Brothers. Maria S. was the mother of the other three members of the partnership as well as of John Fry, Jr., the grantor in the deed, and who was not shown in the testimony to have had any further connection with the title. This partnership, including the ownership of the land, continued until December, 1881, when it was dissolved, and the land by the agreement of dissolution, went to Thomas J. Fry, who lived on it from that time

until his death January 20, 1906. Deeds were made by the other owners to Thomas J. Fry for the purpose of carrying out this arrangement, on February 12, 1885. In 1886 he formed a partnership with his brother John for the purpose of dealing in cattle and preparing them for market. They fed on this place, but there was no evidence that John had any connection whatever with the title or that the land constituted any part of the joint capital. The Ferrell judgment under which the land was sold to Mathews in 1894 arose out of the dealings of this partnership which passed out of existence on March 3, 1893. John Fry died in 1901. The court at plaintiff's instance gave the jury the following instructions:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff was married to Thomas J. Fry in 1882, and that while the plaintiff was the wife of said Thomas J. Fry, the said Fry was in possession of the land described in the petition, exercising ownership thereover, under deeds of conveyance thereof from Albertus Fry, John Fry, Jr., Martin L. Fry and Maria S. Fry, or was so in possession and exercising ownership over said land under and by virtue of an agreement of dissolution of the copartnership of Fry Brothers, whereby said land was set off to Thomas J. Fry, then the right of the plaintiff to dower in said land thereupon attached to said land, and such right is not affected by the fact, that after said Thomas J. Fry so entered into possession and began to exercise ownership over said land, he and said John Fry, Jr., entered into a partnership and used said land in their partnership business.

"You are therefore instructed that if you shall find and believe from the evidence that the plaintiff was married to Thomas J. Fry in 1882, and that while the plaintiff was the wife of said Thomas J. Fry, the said Thomas J. Fry was in possession of the land described in the petition, exercising ownership thereover,

under deeds of conveyance thereof from Albertus Fry, John Fry, Jr., Martin Fry and Maria S. Fry, or was so in possession and exercising ownership over said land under and by virtue of an agreement of dissolution of the copartnership of Fry Brothers, whereby said land was set off to Thomas J. Fry, and that the partnership between said Thomas J. Fry and John Fry, Jr., if any existed, was not formed until after the said Thomas J. Fry entered into possession of said land under such deeds of conveyance or under such agreement of dissolution; and if you shall believe also that Thomas J. Fry is now dead, and that the defendant is now the owner of said land, then the plaintiff is entitled to dower in said land, and your verdict should be for the plaintiff.

"2. The jury is instructed that after the several conveyances from John Fry, Jr., to T. J. Fry, A. Fry, M. L. Fry, introduced in evidence, there is no testimony that John Fry, Jr., or the copartnership of John Fry, Jr., and T. J. Fry, as such copartnership, had or held any interest in the land described in the petition.

"3. The court instructs the jury that the only question for your determination is whether or not the plaintiff is entitled to dower in the land described in the petition.

"You are therefore instructed that if you shall find and believe from the evidence that the plaintiff was the wife of Thomas J. Fry, and that during the time she was his wife, the said Thomas J. Fry was the owner of and in possession of the land described in the petition, and that the said Thomas J. Fry is now dead, and that the plaintiff has not relinquished or conveyed her dower interest (if any) in the land described in the petition, and that the defendant was, at the time of the commencement of this action, the owner of the land described in the petition, then your verdict should be for the plaintiff."

To the giving of each of which the defendant objected and excepted at the time upon their being given.

The defendant first asked a peremptory instruction in her favor which was refused and she excepted. She then asked six others as follows: The second was to the effect that if the real estate in question was in fact partnership property, recognized and used by Thomas J. Fry and John Fry, Jr., as partners in and about their partnership business, and that the same was sold as such by the sheriff of Bates county under execution and a conveyance thereof made to S. S. Mathews, and that the defendant in the case, through her agent, paid to Mr. Mathews in order to procure a title to said land the sum of $4197.58, their verdict should be for defendant.

The third sought to have recouped out of any interest of the plaintiff in the land the *pro rata* share of $61.39 taxes paid by defendant, which was an incumbrance against the land at the time of her purchase with interest at the rate of six per cent until the time of payment.

The fourth was to the effect that if the jury should find that the real estate in question, along with other property, was held by Thomas J. Fry and John Fry, Jr., as partnership property, and that said partnership at the time of conveyance was indebted in an amount in excess of all their property, their finding should be for defendant.

The fifth was to the effect that if the property in question was partnership property of Thomas J. Fry and John Fry, Jr., and as such was sold under execution against them to S. S. Mathews, and that the defendant in order to procure title to this land paid $4179.58 to said Mathews, then their finding should be for defendant.

The sixth predicated recovery by defendant upon the fact of the land being owned and used as partnership property by Thomas J. Fry and John Fry; Jr., and that they were insolvent at the date of purchase by the defendant.

The seventh is as follows:

"The court instructs the jury that if they shall find and believe from the evidence that Thos. J. Fry was married to Lydia J. Fry, who joined with him in the deed to the defendant, introduced in evidence, and after the separation of the plaintiff and said T. J. Fry, then the presumption arises that said Thos. J. Fry was lawfully divorced from the plaintiff here, and if he did obtain such divorce, then the plaintiff is not entitled to any dower in any of the real estate in question, and your finding and verdict should be for the defendant."

Under the instructions the jury found that "the plaintiff is entitled to dower in the land described in her petition."

Upon this verdict, after the overruling of motions for a new trial and in arrest of judgment duly raising the questions we shall consider, an interlocutory judgment was entered that plaintiff be endowed of the lands and appointing commissioners to admeasure and assign the dower. They reported at the May term, 1910, that they had assigned to plaintiff the south half of the southwest quarter of section 26, and the south half of the southeast quarter of section 27, described in the petition, which was confirmed by the court and damages assessed for its detention *pendente lite* at $90, and $2 per acre per annum as rental until possession delivered. Final judgment was entered accordingly, from which, after motions for a new trial and in arrest overruled, the defendant has appealed.

Such further facts as may be necessary will be stated in the opinion.

I.   This being a suit by plaintiff for the assignment of dower in lands alleged to have been owned by Thomas J. Fry, now deceased, in his lifetme, it was necessary for her to set out in her petition the three facts necessary to the existence of the right: (1) her marriage to Fry; (2) his seizin or the seizin of some other person to his use during the marriage, of an estate of inheritance in the land; and (3) his death.   If the inchoate right accrued during the lifetime of the husband by the concurrence of the first two of these conditions and something which afterward occurred is relied on to defeat it, it must, under the code, to be made available as a defense, be pleaded by the defendant.   Recognizing and following these rules, the defendant has, among other affirmative defenses interposed by her, stated in her answer "that prior to the marriage of said Thomas J. Fry to the said Lydia, he was lawfully divorced from the plaintiff here, for her fault, if in fact he was ever lawfully married to her."   Upon this plea hangs the serious question in this case.   As its decision will necessarily dispose of various correlative questions which, arose during the trial, it should be first considered.

*Requisites for Dower.*

That the plaintiff was legally and formally married to Fry in Bates county on the 16th day of March, 1882, is not disputed, and that he was also married in the same county to one Lydia J. Farris on the 24th day of November, 1891, is equally well established.   Nor is it questioned that he lived in that county continuously from sometime before 1881 up to the time of his death on January 20, 1909, and that during that time, on November 17, 1894, he made a warranty deed conveying the land in question to the defendant in which Lydia J., his then wife, joined.   The defendant relies upon the fact of the marriage to the last wife to establish the

*Second Marriage: Presumption of Prior Divorce: Wife's Misconduct.*

other facts that even though the inchoate right of dower in plaintiff had attached to these lands during her marriage with him, yet Fry had been afterward divorced from her *for her own fault or misconduct*, and her right to be endowed thereby defeated in accordance with the terms of the statute (R. S. 1909, sec. 359).

The evidence tends strongly to show, and the appellant's argument scarcely questions, that during the time intervening between December, 1881, and February 20, 1885, Thomas J. Fry was seized in fee simple absolute of an undivided one-fourth of these lands while his brothers Albertus Fry and Martin L. Fry, and his mother Maria S. Fry, were seized of the same estate to his use in the remaining undivided three-fourths; and that on the last named date they conveyed or released the legal title in that three-fourths interest to him, and he was thereafter seized, at law as well as in equity, of the whole, until the conveyance to the defendant. It was upon the theory that in such a state of facts the inchoate right of dower of plaintiff would attach upon her marriage to Thomas J. Fry, if she was so married, in 1882, that the first instruction for the plaintiff was given by the court; but notwithstanding the provision of section 2207, Revised Statutes 1879, in force at the time, making possession of the husband unnecessary, the court imposed upon plaintiff the further burden of proving that Thomas J. Fry had been in possession of the land, exercising ownership thereover, during the marriage. This the statute made unnecessary whether the estate were a legal or equitable one. [Davis v. Green, 102 Mo. 170.] That this instruction covers the whole issue in the absence of facts tending to establish one or more of the special defenses pleaded, is beyond question, and we do not understand it to be seriously controverted by the appellant. She simply asserts that the second marriage raises the presumptions of divorce *and misconduct* as pleaded, and that they are fatal to the

plaintiff's case; and cites Maier v. Brock, 222 Mo. 74,
as settling the question in her favor. That case, like
this, was a proceeding for the assignment of dower.
The lands were situated in Jasper county, and had
belonged to Joseph G. Maier in his lifetime. Mr.
Maier had been married to the plaintiff in Germany on
January 24, 1865, and they lived together as husband
and wife until the spring of 1866 when he left her and
came to the United States. The next heard of him was
sometime during the period included in the years 1872
and 1874 when he appeared in Carthage with another
wife and acquired the farm in question, and lived on
it until the time of her death. In 1885 he married a
third wife, with whom he lived on the same land until
her death, having by this marriage two daughters. He
then married the fourth wife, from whom he was
divorced on January 17, 1902, and married the wife
who survived him, by whom he had one child. In
that case there was no question as to which of the
parties was presumed to be the innocent and injured
one in the divorce which the law supplied in favor of
the presumption of innocence. The land was acquired
after the second marriage, so that a divorce so presumed
must have already severed the prior relation of husband
and wife, the existence of which during the seizin of
the husband is the prime requisite to the endowment of
the wife. The case was decided upon the authority
of Johnson v. Railroad, 203 Mo. 381, in which no such
question could have arisen. This case presents in its
nakedness the question whether the law, in presuming
the innocence of the husband to protect him from the
imputation of criminal wrong, will, upon no other
foundation than that presumption, build another
presumption, that the wife has been guilty of wrong
and misconduct in the marriage relation and assess
against her the serious penalty imposed by our statute
for such an offense. It is a question suggestive of droll
situations. If the answer of appellant be the true

one, what would we say to the man and woman who should each come before us with record of their marriage to each other and the record of a subsequent marriage to another, and ask us upon those facts alone to not only presume that they had been legally divorced but to adjudicate which was the innocent and injured one, and which had been guilty of marital misconduct? It would be easy to presume, in favor of innocence, that they had been divorced.    Having done this, the presumption would have performed its beneficent office, and the innocence of both would have been vindicated; for then under our own statute each would be equally at liberty to remarry, irrespective of guilt or innocence in the marriage relation; but they might pile presumption upon presumption and neither could thereby cast upon the other the burden of proving the innocence that the law presumes. That would, in its very nature, require direct evidence. As was said by the Supreme Court of Iowa in Thayer v. Coal Company, 121 Ia. 121, 130, "A presumption can arise only from facts actually proven by direct evidence. . A presumption is not a legitimate foundation for a presumption. If this were not true there would be no limit to conjecture." This case furnishes an excellent illustration of the reason for that rule, which is as old as the common law itself. If this man ever obtained a divorce, the record of it was in the county in which he had lived on the very land in controversy constantly for a period beginning before his first marriage and extending to the day of his death. If he had ever obtained a divorce the record of it was in the court-house where this case was being tried; yet out of abundant tenderness for him, the law presumes that he has not been guilty of bigamy, by presuming that the former marriage relation had ceased at the instance of one or the other of the parties to it. Having this concession, founded not upon any evidence of the truth but upon tenderness of the law, the appellant

asks that it be used as a basis for a presumption of guilt against one whom the law has already sacrificed, to some extent, to save another from a like infliction. We sympathize with those fictions of the law which have been invented to serve truth, and to afford, in the administration of justice, a foothold for that confidence and sympathy which enter into and must be reckoned with as elements of every human association; but in attacks upon innocence, which the law presumes in favor of all, they must yield to facts. The shafts of attack may be turned with lightning rapidity against a new victim, but never so quick that the presumption of innocence is not already ahead of it, interposing its own shield in the interest of fair play. There is nothing in the presumption relied on in this case that tends in any degree to show that the plaintiff has forfeited by fault or misconduct her right to be endowed under our statute. Nor is there anything in Johnson v. Railroad in which Judge GRAVES, for this court, has collected a wealth of authority upon the subject which leaves little to be done or said in that direction, nor in Maier v. Brock, in which, in an exhaustive opinion by Judge WOODSON, we have restated and again given our approval to the same doctrine, which, either directly or by implication, questions the law as we have here stated it.

It follows that there was no prejudicial error in the action of the court in excluding the record of the marriage of Thomas J. Fry to Lydia J. Farris on November 24, 1891, long after the inchoate right of dower of the plaintiff had attached. Of itself it was only evidence of a prior divorce so far as the presumption of innocence required that it should be indulged to protect Mr. Fry from the imputation of bigamy in the act of contracting it, and could not go back, in its search for something upon which it might operate, to the time of the first marriage in 1882, nor to any other time than that indicated by the necessity which it

created.   A divorce could only relate back to bar her rights already attached because it had been obtained for her fault or misconduct, and no evidence was offered to that effect.   Considered as a step in the proof of a divorce for her misconduct, it still devolved upon the defendant to offer the supplemental evidence, or at least state her intention to do so, as a ground for the admission of that which, while standing alone, had no tendency to sustain her defense.

II.   There is no evidence whatever that after the dissolution of the original partnership of Fry Brothers in December, 1881, John Fry, Jr., of the copartnership of John Fry, Jr., and T. J. Fry, as a copartnership, had or held any interest in the land in controversy and the court was right in so instructing.   It follows that the Mathews title acquired at sheriff's sale under the Ferrell judgment against John Fry, Jr., and T. J. Fry did not affect the dower interest of plaintiff.

III.   This brings us to the claim pressed in the third instruction asked by and refused for the defendant, founded upon the evidence that at the time of the execution of the deed to defendant dated November 17, 1894, the taxes for that year in the amount of $61.39 remained unpaid and were paid by defendant as a part of the purchase price of the lands and that such proportion thereof as the plaintiff's dower interest bears to the whole land, whatever that may mean, should be deducted from her interest.

Taxes Paid by Purchaser.

Whatever the relation of the plaintiff may have been to the State with respect to the lien of these taxes, as between herself and her former husband and the defendant, his grantee, no duty rested upon her to pay the tax.   There is nothing in the point.

For the reasons we have given the case seems to have been well tried and the judgment of Bates Circuit Court must be affirmed.   *Blair, C.,* concurs.

PER CURIAM.—The foregoing opinion of Brown, C., is adopted as the opinion of the court. All the judges concur.