Robert L. Leach, State Superintendent of Banking, et al., Appellants, v. Citizens' State Bank of Arthur et al., Appellees.

**BANKS AND BANKING:** Insolvency—Preference—Drawee Bank as
1　Agent to Collect from Self. The act of the indorsee of a check in
　　sending it to the *drawee* bank for "collection and remittance" creates
　　no relation of principal and agent. The result is that, if the drawee
　　bank becomes insolvent, the indorsee's claim on account of the check
　　is not a *preferred* claim.

**BANKS AND BANKING:** Insolvency—Purchase of Draft—Non-trust
2　Relation. The mere purchase of a draft gives rise to no trust rela-
　　tion between the purchaser and the bank issuing the draft.

**BILLS AND NOTES:** Drafts and Checks—Operation and Effect in Re
3　Assignment. Principle reaffirmed that the mere issuance of a draft
　　works no equitable assignment to the payee of the funds of the drawer
　　in the hands of the drawee, and that consequently, in case of the sub-
　　sequent insolvency of the drawer, the payee is not a preferred creditor.

Headnote 1: 7 C. J. p. 751. Headnote 2: 7 C. J. p. 751. Headnote 3:
5 C. J. p. 916.

Headnote 3: 2 R. C. L. 621.

*Appeal from Ida District Court.*—E. G. Albert, Judge.

DECEMBER 14, 1926.

REHEARING DENIED APRIL 7, 1927.

The intervener Federal Reserve Bank claimed a preference in the distribution of assets in the hands of the state superintendent of banking, as receiver of an insolvent state bank, on the theory that the bank held funds as trustee. From a decree establishing such preference the state superintendent of banking and Anderson, intervener, appeal.—*Reversed.*

*Ben J. Gibson,* Attorney-general, and *Herbert A. Huff* and *S. S. Faville,* Assistant Attorney-generals, for Superintendent of Banking, appellant.

*J. R. Murphy,* for A. G. Anderson, Intervener, appellant.

*Charles L. Powell* and *Snell Bros.*, for Intervener Federal Reserve Bank, appellee.

VERMILION, J.—The facts are not in dispute. The Federal Reserve Bank of Chicago sent by mail, direct to the Citizens' State Bank of Arthur, checks drawn by various parties on the latter bank. The checks were sent in two lots, and with each was a communication called a cash letter, which read:

"We enclose herewith for collection and remittance at par items listed below."

The Citizens' State Bank charged the various checks to the accounts of the several drawers, and issued its two drafts upon the Continental & Commercial National Bank of Chicago, pay-

1. BANKS AND BANKING: insolvency: preference: drawee bank as agent to collect from self.

able to the order of the Federal Reserve Bank, one for the amount of the checks inclosed with each cash letter. These drafts were received by the Federal Reserve Bank, and, through the clearing house, presented to the drawee. They were not paid, and were returned marked: "Not sufficient funds." On the next business day, the drafts were by messenger again presented. Payment was again refused, and the drafts marked: "Drawing bank reported closed." The Citizens' State Bank closed its doors on the morning of the day the drafts were for the second time presented to the drawee for payment, and before such presentation. The appellant the state superintendent of banking was subsequently appointed receiver, and the bank is insolvent and in process of liquidation.

The Citizens' State Bank was not a member of, or stockholder in, the Federal Reserve Bank, and had no deposit account in that bank, nor did the appellee have any deposit in the Citizens' State Bank. There was another bank in the town of Arthur. It had, at one time, been the practice of the Federal Reserve Bank to send checks on the Citizens' State Bank to such other bank for collection; but, at the request of the Citizens' State Bank, for some time immediately prior to these transactions, such checks had been sent directly to the latter. This arrangement was made by correspondence, and did not include any agreement as to the manner of remitting the proceeds of collections.

Upon this state of facts, and a further showing from which

it is claimed it appears that the amount of the checks went to augment the assets in the Citizens' State Bank, and was traced into the possession of the receiver, the Federal Reserve Bank asked that its claim for the amount of such checks be established as a preferred claim against the assets in the hands of the receiver, on the theory that a trust was created.

The determination of the question of the existence of a trust depends primarily upon whether the relation of the Federal Reserve Bank to the Citizens' State Bank was that of principal and agent, with respect to the fund. If the relation was that of principal and agent, and the fund augmented the assets in the Citizens' State Bank, and has been traced into the hands of the receiver, it is not open to question that, under our prior decisions, a trust was established, and the preference was properly allowed. Nurse v. Satterlee, 81 Iowa 491; Brown v. Sheldon St. Bank, 139 Iowa 83; Messenger v. Carroll Tr. & Sav. Bank, 193 Iowa 608; Murray v. North Liberty Sav. Bank, 196 Iowa 729.

I.    The relation of the Federal Reserve Bank to the Citizens' State Bank, as the holder of checks drawn upon the latter, clearly involved no relation of trust. It was merely the holder of checks drawn by depositors in the latter bank upon funds so on deposit therein, and as to which the Citizens' State Bank was the debtor of the depositor. If the checks had been personally presented at the counter of the Citizens' State Bank by an agent of the Federal Reserve Bank, and the draft of the latter had been accepted therefor, or if such an agent and the drawee bank had cleared checks held by one against the other, by the draft of the one against whom the balance was found, no trust arising from a relation of principal and agent would have been created. In such case, no element of agency between the holder of the checks and the drawee bank is present, and the relation is only that of debtor and creditor. We so held in Danbury St. Bank v. Leach, 201 Iowa 321, and Leach v. Iowa St. Sav. Bank, 202 Iowa 95.

The question is narrowed to the proposition whether the relation of principal and agent arose when the Federal Reserve Bank sent the checks by mail directly to the drawee bank. At this point, appellee stresses the language of the accompanying letter: that they were sent "for collection and remittance." But that, in our opinion, is far from conclusive. When the holder of

a check presents it to the drawee and receives the amount called for by it, he may, in a sense, be said to collect it, but, more properly speaking, he receives payment of it. Certainly, such a transaction involves no question of agency between the parties immediately concerned, but it is one between two principals, one of whom is entitled to receive, and the other is bound by its obligation to its depositor to pay, the amount called for by the check. Each is acting for himself; not one for the other. Such was the holding in *Danbury St. Bank v. Leach,* supra.

The checks were, obviously, not sent for collection in the sense that the drawee bank should collect them from the drawers by presenting them to, and receiving payment from, the drawers. They were sent to the bank on which they were drawn, for payment by that bank. The drawee bank was under obligation to its depositors, the drawers of the checks, to pay out their funds upon their orders. The checks were such orders, and the Federal Reserve Bank, as the holder of the orders, was entitled to such payment on presentation, if the drawers' funds on deposit were sufficient for that purpose.

We are unable to see that the sending of the checks to the drawee bank by mail gave rise to any other or different relation than would their presentation over the counter. The drawee was under, and assumed, no obligation except such as it sustained to the drawers of the checks to pay them, if their deposits were sufficient. The drawee, to the extent its draft was payment, paid the checks, in pursuance of its obligation to its depositors to do so. It did not act, or assume to act, for or as the representative of the holder, but in discharge of its own obligation. The checks, it is true, were intrusted to the bank, but only for payment by it, not for the bank to do something with them for the holder, as to collect them from the drawers or some third person, but to do what it was itself bound to do in respect to them. The manner of payment, by remittance to the holder, was at the direction of the holder. But, when we consider the remittance as a mere manner of payment, in so doing the drawee was still simply fulfilling its own obligation, in the manner directed by the holder.

It is an elementary principle of the law of agency that an agent cannot, except with the full knowledge and consent of his principal, act for the principal in a transaction where he has,

either in his own right or for a third party, an adverse interest. Where one acts in a transaction with another in performance of an obligation resting upon him, the knowledge and consent of the other that he is so acting would seem to have the effect rather to destroy all idea of agency than to bring the transactions within the exception. In such case, the one demands what he has a right to demand of the other, and the latter does what he is bound to do.

It is generally held, although there is authority to the contrary, that, as between the owner of a check and a bank to which it is given for collection, the drawee bank, particularly where there is another bank in the same city, cannot be considered a suitable agent, in contemplation of law, to enforce, on behalf of the owner, the demand against itself, and that the bank so sending the check to the drawee bank is guilty of negligence. *Western Wheeled Scraper Co. v. Sadilek*, 50 Neb. 105 (69 N. W. 765); *Pickett v. Baird Inv. Co.*, 22 N. D. 343, (133 N. W. 1026); *German Nat. Bank v. Burns*, 12 Colo. 539 (21 Pac. 714); *Anderson v. Rodgers*, 53 Kan. 542 (36 Pac. 1067); *Winchester Milling Co. v. Bank of Winchester*, 120 Tenn. 225 (111 S. W. 248, 18 L. R. A. [N. S.] 441); *Minneapolis S. & D. Co. v. Metropolitan Bank*, 76 Minn. 136 (78 N. W. 980); *First Nat. Bank v. Bank of Whittier*, 221 Ill. 319 (77 N. E. 563); *First Nat. Bank v. Citizens' Sav. Bank*, 123 Mich. 336 (82 N. W. 66); *Herron Co. v. Mawby*, 5 Cal. App. 39 (89 Pac. 872); *Jefferson County Sav. Bank v. Hendrix*, 147 Ala. 670 (1 L. R. A. [N. S.] 246); 7 Corpus Juris 615. These cases are illuminative of the attitude of the courts toward the principle involved, that no agency is created by the sending or presentation of checks to the drawee for payment.

The cases where the question has arisen in the precise situation presented here are not in agreement. In *People v. Merchants & Mechanics' Bank*, 78 N. Y. 269, speaking of a like situation, the court said:

"The learned counsel contends that the Troy bank was agent of the Chemical Bank to receive payment of the check. * * * But it is rather metaphysical to argue that any such agency was created. The check was sent by mail to the bank upon which it was drawn, for payment, not for collection. True, the holder entrusted the bank with the custody of the check until

it should be paid. But that is done every time a check is presented over the counter for payment. The only difference in this case is that, instead of standing at the counter, or sending someone to stand there, to receive payment, the holder requested the bank to remit by mail."

In *Lamro St. Bank v. Farmers' St. Bank*, 34 S. D. 417 (148 N. W. 851), it was held that, since the checks were issued prior to the enactment of the Negotiable Instrument Law, they amounted to an assignment of the credit of the depositor to the extent of the checks, and the payees of the checks to that extent became creditors of the bank, and it was said:

"When the checks were indorsed to the appellant, it became a creditor of the respondent bank, to the extent of the face of the checks; and when appellant exchanged the checks for the drafts, it in no wise changed its relationship to the respondent. It was a creditor of the respondent bank before the issuance of the drafts, and it was a creditor after they had been issued."

It was said that the case fell within the rule of *People v. Merchants & Mechanics' Bank*, supra.

In Missouri, the St. Louis Court of Appeals, in *American Bank v. People's Bank* (Mo. App.), 255 S. W. 943, said that it could not become reconciled to the proposition that, where the depositor of a bank by his check ordered the bank to pay to another all or a portion of his deposit, and the payee of the check applied to the bank for payment of the check, he thereby constituted the bank his agent, to collect from itself for him the amount of the check; or that thereby the bank became a trustee for the use and benefit of the payee. The Supreme Court of that state has, however, held, in *Bank of Poplar Bluff v. Millspaugh*, 313 Mo. 412 (281 S. W. 733), and *Federal Reserve Bank v. Millspaugh*, (Mo.), 282 S. W. 706, that the act of one bank in sending to another a check or draft drawn on the latter for "collection" was equivalent to designating the latter as the agent of the sender, to present the paper to itself, and collect and send the money; and that in such a situation a trust relation existed, from which, under proper circumstances, a right to a preference would arise.

The Supreme Court of Virginia has held, in *Federal Reserve Bank v. Peters*, 139 Va. 45 (123 S. E. 379), that, when a bank receives from its correspondent a check upon itself, it is an agent

for its correspondent, to make presentation to itself. It cites, in support of the doctrine announced, only the case of *Hilsinger v. Trickett,* 86 Ohio St. 286, which merely holds that the sending of a check to the drawee bank where there is no other bank in the town is not negligence. The *Peters* case was followed in *Federal Reserve Bank v. Bohannan,* 141 Va. 285 (127 S. E. 161), without discussion of the particular point.

The Supreme Court of Kansas, in *Kesl v. Hanover St. Bank,* 109 Kan. 776 (204 Pac. 994), by a divided court, held that such a transaction had the same effect as though the drawee bank, in its capacity as agent of the holder of the check, had presented the check to itself, in its capacity as drawee, for payment; and received the actual money.

Distinguished as are the courts so holding, we are unable to subscribe to a doctrine that will create what, we think, is a wholly fictitious relation of principal and agent, out of the presentation of a check by the holder bank to the drawee bank, with directions to remit the amount called for, or to distinguish,—as would be necessary, should we so hold, in view of our former decisions,— between the presentation of the check over the counter of the drawee bank and its presentation by mail, with directions to remit.

The case of *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608, does not support appellee's contention at this point. In that case, a sight draft drawn on a depositor of the bank was sent to the bank for collection, and we held that the relation was that of principal and agent. The fact that the draft was paid to the bank by the check of its depositor did not bear upon the relations between the sender of the draft and the collecting bank, but was urged as showing that the funds in the bank were not augmented by the amount so collected.

It seems to us to be more in consonance with sound reasoning to say that the mere sending of checks to the drawee bank by mail, with direction to remit, instead of presenting them at the bank's counter for payment, does not create a relation of principal and agent, than to overlook the obvious inconsistency involved in holding that by so doing the drawee bank becomes the agent of the holder, to collect from itself. No such relation arose from the mere fact that one bank held checks upon the other, and no such relation would be created by their presentment for pay-

ment; nor do we think it would be created by the manner of their presentment, considered as a mere demand for payment, whether in person or by mail.

II. It is generally held that the mere purchase of a draft gives rise to no trust relation between the purchaser and the bank issuing the draft. *American Exp. Co. v. Cosmopolitan Tr. Co.,* 239 Mass. 249 (132 N. E. 26); *Beecher v. Cosmo-*

**2. BANKS AND BANKING: insolvency: purchase of draft: non-trust relation.**

*politan Tr. Co.,* 239 Mass. 48 (131 N. E. 338); *Legniti v. Mechanics & Metals Nat. Bank,* 230 N. Y. 415 (130 N. E. 597); *Spiroplos v. Scandinavian-American Bank,* 116 Wash. 491 (199 Pac. 997); *Chetopa St. Bank v. Farmers & Merch. St. Bank,* 114 Kan. 463 (218 Pac. 1000); *Harrison v. Wright,* 100 Ind. 515; *Jewett v. Yardley,* 81 Fed. 920; *Clark v. Toronto Bank,* 72 Kan. 1 (82 Pac. 582, 2 L. R. A. [N. S.] 83); *Danbury St. Bank v. Leach,* supra.

We may say here that there is no claim that the officers of the Citizens' State Bank had knowledge, when the drafts were issued, that the bank was insolvent, and that for that reason a trust relation arose. See *Whitcomb v. Carpenter,* 134 Iowa 227.

III. But it is contended that the drafts issued to the Federal Reserve Bank constituted equitable assignments of a fund in the Continental & Commercial National Bank, as against the drawer, or against the receiver, representing the drawer, and

**3. BILLS AND NOTES: drafts and checks: operation and effect *in re* assignment.**

that out of such fact a trust arose. We have held to the contrary in *Leach v. Mechanics Sav. Bank,* 202 Iowa 899, and it is unnecessary to further discuss the question here. We conclude that no relation of trust was established, and that the Federal Reserve Bank was not entitled to a preference.

A motion to dismiss the appeal submitted with the case is overruled.

The judgment and decree are—*Reversed.*

DE GRAFF, C. J., and EVANS, J., concur.

MORLING, J., concurs in the result.

STEVENS, FAVILLE, and ALBERT, JJ., take no part.