ROBERT L. LEACH, State Superintendent of Banking, v. GRINNELL
SAVINGS BANK.

L. A. ANDREW, Receiver, Appellant, v. LOUIS BLOCK et al.,
Trustees, Appellees.

BANKS AND BANKING: Insolvency—Preference—Non-trust Relation.
 1  The act of the officers of a local fraternal order in executing in fa-
    vor of the grand lodge a warrant on the local lodge funds, and there-
    with purchasing an ordinary bank draft in favor of the grand lodge,
    creates no trust relation and furnishes no basis for a claim of pref-

erence to the assets of the drawer-bank in case the latter becomes insolvent. (See Book of Anno., Vol. 1, Sec. 9239.)

BANKS AND BANKING: Insolvency—Fraudulent Issuance of Draft. 2  Evidence held insufficient to show that a draft was issued at a time when the drawer-bank was insolvent, to the knowledge of its officers.

Headnote 1: 7 C. J. p. 751.  Headnote 2: 7 C. J. p. 751.

*Appeal from Poweshiek District Court.*—CHARLES A. DEWEY, Judge.

MARCH 8, 1927.

The superintendent of banking, as receiver of the Grinnell Savings Bank, appeals from the order and judgment of the district court of Poweshiek County granting preferential payment to the claim of the Grand Lodge of Iowa, A. F. & A. M., against such receiver. The facts are stated in the opinion.— *Reversed.*

*John Fletcher,* Attorney-general, *Maxwell O'Brien,* Assistant Attorney-general, and *Frank Bechly,* for appellant.

*Bollinger & Block,* for appellees.

STEVENS, J.—On January 14, 1925, Ross V. Coutts, secretary of Herman Lodge No. 273, A. F. & A. M., Grinnell, Iowa, drew the following instrument, subsequently signed by the master and treasurer of the lodge, respectively, as indicated by the instrument, viz.:

"No. 2107
"Grinnell, Iowa, Jan. 14, 1925.

"The Treasurer
"Pay to the order of
"Grand Lodge of Iowa A. F. & A. M.          $572.00
"Five hundred seventy two................Dollars
"For 1924 Grand Lodge Dues
                     "Herman Lodge No. 273, A. F. & A. M.
     "Payable to
                          "J. W. Gannaway, Master.
"Grinnell Savings Bank
                          "Ross V. Coutts, Secretary.
"Grant Ramsey, Treasurer."

: This was exchanged at the Grinnell Savings Bank, where the account of the treasurer was kept, for a draft for the amount, drawn on the Merchants Trust Bank of Chicago, Illinois, and made payable to the secretary of the grand lodge. Before the draft was presented to the drawee bank, the Grinnell Savings Bank became insolvent, and ceased to do business. The trustees of the grand lodge filed a claim against the receiver of the insolvent bank, alleging that he had in his possession trust funds belonging to the lodge, for the payment of the claim, and asking that a preference be established. Appellees in argument treat the foregoing instrument as a sight draft, and as having been accepted by Grant Ramsey, treasurer of the local lodge. On the other hand, it is designated by appellant as a mere warrant, drawn on the treasurer of the local lodge, for the purpose of paying grand lodge dues. The instrument was drawn before the local lodge was in default in the payment of its grand lodge dues, and we may assume that it was drawn in pursuance of authority granted by the lodge. It may be conceded that the instrument on its face has the characteristics of a sight draft. We think it clear, however, that it was not so intended or treated by the officers of the lodge. The whole contention of appellees is that, after the instrument was signed by the treasurer, in whose name the account in the bank was kept, it was held by the secretary as the agent or bailee of the grand lodge, and that it could be rightfully paid only upon the proper indorsement thereof. The secretary was neither bailee nor agent of the grand lodge, but an officer and agent of the local lodge, authorized to transmit the amount due the grand lodge to its secretary. The instrument was a mere warrant of the lodge, so drawn as to be both an order on the treasurer thereof for the payment of money and a memorandum showing to whom the money was to be paid. Grant Ramsey, as treasurer, evidently so understood and treated it. The instrument was not complete nor payable at the bank until signed by the treasurer. It was never, in fact, delivered to the grand lodge, nor did the grand lodge ever have control thereof. The evidence of the secretary shows that the business was done in the usual way; that, upon delivery of the instrument to the bank, it was canceled, the account of the treasurer of the local

*1. BANKS AND BANKING: insolvency: preference: nontrust relation.*

lodge debited, and a draft drawn, exactly the same as if a check for the amount had been presented to the bank, instead of a warrant. While the record on this point is vague, to say the least, we think there can be no doubt that the instrument was a mere warrant of the lodge, drawn and signed in the usual and customary way of doing business. It is true, it is, in terms, made payable to the grand lodge, but, when it is treated as a mere warrant, and not as a bill of exchange, this becomes quite immaterial. No title to the warrant or to the funds of the lodge in the bank passed to the grand lodge when the warrant was signed by the treasurer of the local lodge. Such was not the purpose for which he signed it.

Claimants concede that the draft drawn by the bank did not work an assignment pro tanto of the funds thereof in the drawee bank. If the foregoing construction of the instrument and of the transaction is correct, then obviously no trust was created, and preferential payment of the claim should have been denied. The draft drawn on the Chicago bank pledged only the credit of the drawer, the same as though the transaction had been had upon a check drawn thereon. *Danbury State Bank v. Leach,* 201 Iowa 321.

It is further contended by appellees that the bank was insolvent, with the full knowledge of its officers, on the day the draft was drawn. We have carefully read and 2. BANKS AND BANKING: insolvency: fraudulent issuance of draft. analyzed the evidence on this point. It appears therefrom that there were sufficient funds in the drawee bank to have paid the draft, had the bank not been closed. There was some delay in presenting the draft at the Chicago bank. The only circumstance tending to show knowledge of the insolvency of the bank, if it was then insolvent, is that $9,000 was borrowed from another local bank on the afternoon of the day on which the draft was drawn. This transaction indicates that the bank was in need of cash, and the officers must have known that the bank's financial condition was not good. It does not, however, satisfactorily show that the bank was then insolvent.

In these circumstances, we cannot hold that the draft was fraudulently issued, without which showing no right to have

preferential payment is shown. The order and judgment of the
district court is reversed.—*Reversed.*

EVANS, C. J., and FAVILLE and VERMILION, JJ., concur.