O. H. SHERMAN et al., Appellees, v. RAY A. LINDERSON et al., Appellants (two cases).

ROBERT L. LEACH, State Superintendent of Banking, Appellee, v. LOCKRIDGE SAVINGS BANK, Appellee, et al., Appellants.

**RECEIVERS:** Authority—Compromise of Claims. A receiver may not
1    compromise claims except under prior authority of, or under subsequent ratification by, the court.

**HUSBAND AND WIFE:** Conveyances—Securing Wife Against Loss on
2    Homestead Mortgage. A bona-fide conveyance of personal property by a husband to his wife, to secure her from liability on a mortgage on her homestead, executed for the purpose of raising money to discharge a debt of the husband's, is prior in right to subsequently rendered judgments against the husband and levies thereunder on the said conveyed property; but the security will be sustained only in so far as will make the wife whole.

Headnote 1:  34 Cyc. p. 257.  Headnote 2:  30 C. J. p. 688.

*Appeal from Jefferson District Court.*—F. M. HUNTER, Judge.

OCTOBER 18, 1927.

This proceeding is a consolidation of three cases, the details of which will be stated in the opinion, in which the district court found for the plaintiff in each case, and denied the relief prayed for by Linderson in his cross-petition.—*Affirmed in part; reversed in part.*

*Ralph H. Munro,* for appellants.

*Starr & Jordan,* for appellees.

ALBERT, J.—These three lawsuits grew out of the following facts: Ray A. Linderson was for many years cashier of the Lockridge Savings Bank, of Lockridge, Iowa. He owned 59

1. RECEIVERS: authority: compromise of claims.

shares of capital stock of that bank when it was closed by the state banking department on December 12, 1924. He also owned his homestead property in the town of Rockford, and two farms: one consisting

of 230 acres, lying southeast of that town, which was occupied by a tenant by the name of Burky, under a partnership agreement, to be hereinafter referred to; the other consisting of 270 acres, occupied by a tenant by the name of Miller, under a similar partnership agreement. The farm occupied by Miller was mortgaged in the sum of $16,500, and the one occupied by Burky in the sum of $19,500. Under these partnership agreements, Linderson was the owner of an undivided half interest in the live stock, crops, etc., and a part of the equipment, and individually owned certain other equipment, which was not of any great value, and which is not involved in this action.

On the 10th day of February, 1925, Linderson made a deed for both farms and a bill of sale of all of his personal property to Mrs. R. C. Davis, sister of Mrs. Linderson. Linderson was also indebted to the Iowa Loan & Trust Company, among others; and after the closing of the bank, and prior to the transfer by Linderson of his property to his sister-in-law, on January 8, 1925, the Iowa Loan & Trust Company sued out an attachment, which was levied on the two farms and the interest of Linderson in the partnership property of Linderson & Miller, and also on his interest in the partnership property of Linderson & Burky. Prior to this, on the 10th day of December, 1924, the Iowa Loan & Trust Company took a mortgage from Linderson for $3,000 on the farm occupied by Burky, and it was on the note accompanying this $3,000 mortgage that the Iowa Loan & Trust Company commenced its attachment case.

Leach, receiver of the Lockridge Savings Bank, instituted an action against the stockholders, to recover their statutory liability; and on March 31, 1925, default was entered against a number of the stockholders,—among others, Ray A. Linderson, —on accepted service of notice. On May 28, 1925, judgment was rendered against Linderson in that proceeding for $5,900 and costs. Later, on January 18, 1926, the receiver issued execution on the judgment thus obtained against Linderson, and levied on the personal property in possession of the tenants Burky and Miller, claimed to belong to the respective partnerships. The receiver then brought an action in equity, to enforce his levy against the partnership properties. In this proceeding (being designated in the record as No. 8273) Ray A. Linderson filed his cross-petition, asking that the judgment against him for

$5,900 and costs be set aside, on the ground that it had been procured by fraud, and after a full settlement made between Linderson and the receiver. He asked that the judgment be vacated and set aside. This relief was refused him by the district court.

In the receivership of the bank, by a method not explained, and at a time not designated, the property of the bank was turned over to Sherman, Huene, and Starr, as trustees, and they instituted an action against Linderson and wife and Burky (designated in the record as Case No. 8574), and also, as such trustees, instituted another action against Linderson and wife and Miller, asking that a receiver be appointed, to take charge of the partnership property and dispose of the same, and that the interest of Linderson therein be held by such receiver, and plaintiff's and all other persons' rights be adjudicated therein, and for further equitable relief. This is designated in the record as Case No. 8575.

In each of these cases it was stipulated that the partnership property should be sold, adjustments made, and the rights of Linderson determined therein, and his share be turned over to the sheriff. These stipulations were carried out, and the sheriff received, and has now in his hands, the sum of $3,457.65, representing the Lindersons' interest in the personal property in controversy.

Leach, superintendent of banking, having been appointed receiver, had one Enyart as his representative in charge of said bank. In the early part of May, 1925, Enyart contemplated starting proceedings in bankruptcy against Linderson, and so advised him; told him that the four-month period was about to expire, as against the Iowa Loan & Trust Company attachment, and that, in order to defeat the same, Enyart was making applications for involuntary bankruptcy proceedings against Linderson, and that, unless something was done, he would do so. On the day in question, Enyart, Linderson and his attorney, and one Riggs, who was vice president of the Iowa Loan & Trust Company, had a meeting, to see what could be done to adjust matters between them. Riggs was naturally opposed to bankruptcy proceedings, and was urging that Linderson do something to meet the situation, and thus avoid the bankruptcy proceedings. The proposition was made (by whom, is in dispute) that

the Lindersons should raise enough money to pay off the Iowa Loan & Trust Company claim, and also raise $1,000, to pay to the receiver in full settlement of Linderson's liability to the bank, included in which liability of Linderson's was a note for $2,300 that he had personally given to the bank, to replace some worthless paper. The record shows that Linderson's liability to the bank, including his statutory liability as a stockholder, amounted to something like $12,000; and it was proposed that he pay to the receiver this $1,000 in full settlement and compromise of said liability. At this point lies the crux of this phase of the case. Enyart testifies that he was willing to accept said $1,000 in full settlement, provided that it was approved by his superior in the banking department, to wit, the receiver. Linderson claims that there was no condition to this offer by Enyart. This question being passed for the moment, Linderson raised the necessary amount in question, part of which was procured by the execution by him and his wife of a mortgage to his sister-in-law, Mrs. Davis, in the sum of $2,650; and through his relatives, Linderson also raised the $1,000 additional. This money was turned over to Riggs, and he assigned to Mary C. Linderson the mortgage and note held by the Iowa Loan & Trust Company, together with all the rights of that company in the attachment proceedings, the amount due the Iowa Loan & Trust Company being paid in full.

It must be conceded, under the record, that the $2,650 mortgage on the town property of Linderson and wife was a mortgage on their homestead property, and that the Lindersons claim that the assignment of the mortgage and note and the trust company's interest in the attachment suit transferred to Mary C. Linderson was a part of the consideration for Mary C. Linderson's executing the mortgage on her homestead. Riggs paid to the receiver $1,000, furnished to him by the Lindersons. Enyart, representing the receiver, on receipt of the $1,000, credited the same on the $2,300 note above referred to, given by Linderson to the bank.

It will be noticed in passing that this transaction occurred prior to the time that judgment was taken by the receiver against Linderson for the $5,900 stock liability, and it is the claim at this point by Linderson that the $1,000 thus paid to Enyart was in full settlement of all liability of Linderson to the

bank; and it is on this transaction that Linderson cross-petitions, and asks that the judgment against him for $5,900 and costs be vacated. To this question we will now give our attention.

The evidence shows as to this matter that Enyart claims that, when this $1,000 proposition was presented to him, he said he would accept it subject to the approval by the receiver. The evidence undisputedly shows that, while these negotiations were pending, Enyart called his superior, the receiver, at the state banking department at Des Moines, by long-distance telephone, and had a conversation with him; that the receiver refused to approve such settlement; and that Enyart so advised Riggs, and Riggs so told Linderson. Later, Riggs called the superintendent of banking by phone, and conversed with him about this proposed settlement. The substance of his testimony is that the superintendent of banking still persisted in refusing to approve this settlement, and Riggs says that he so told Linderson, although Linderson denies that Riggs told him. Riggs further says that, after he received the information that the receiver would not accept the proposed settlement, "I conveyed that [the information] to him [Linderson], and he finally decided to pay the $1,000 anyway, and he did pay it." Linderson's wife testifies that, on the evening previous to this, Enyart came to their residence, and made a proposition to her husband that he would take $2,000 in cash in full settlement of this liability. After Riggs had talked with the banking department at Des Moines, Linderson insisted that he wanted something to show that, in making these payments, he was making a full settlement with both the Iowa Loan & Trust Company and the receiver of the bank, whereupon Riggs' gave him the following writing:

"May 17, 1925. We have this day received from R. A. Linderson $400 represented by drafts now have in the hands of the sheriff of Jefferson county, $513, and R. A. Linderson agrees to pay to the Iowa Loan & Trust Co. sufficient amount to make the total of $1,000 which amount is to be paid to receiver of the Lockridge Savings Bank, and it is our understanding with the receiver that there will be no further charge instituted against R. A. Linderson. [Signed] C. W. Riggs, Vice President."

Objection was made by Linderson to the word "charge" in the last line of this writing, and an attempt was made to erase

the same; but he was told that the parties understood what was meant, and it was left as it originally was.

The judgment of $5,900 entered against Linderson is, on the record, a verity; and, if the question be passed as to whether or not, under the record, it could be set aside on Linderson's cross-petition herein, it is to be remembered that the burden of proof was on Linderson in this matter, to establish his claim by a preponderance of the evidence; and we must say that, as we view this record as a whole, he has failed to sustain this burden. Further than this, the receiver being an officer of the court, he had no power to make a compromise and settlement of this character, without either having an order of the court, in the first instance, to make such settlement, or the approval of the court of the settlement, after so made. 34 Cyc. 257. The record shows no such order or approval. This holding, therefore, disposes of Linderson's cross-petition, and the action of the court in refusing to set aside the judgment thereunder was correct.

In Cases Nos. 8574 and 8575, Ray A. Linderson and Mary C. Linderson filed answer, in which they plead that the $5,900 judgment was obtained in violation of a previous agreement of settlement made and entered into between the superintendent of banking and Ray A. Linderson, on the 7th day of May, 1925. They further allege that, as a part of said agreement of settlement, Linderson assigned all of his right, title, and interest in and to the leases existing between Linderson and his tenants, Burky and Miller, to Mary C. Linderson, his wife, and that Ray A. Linderson has no right, title, or interest in any of the subject-matter or personal property under the lease agreements between Linderson and Burky and Linderson and Miller, respectively; that the personal property therein described and referred to is the absolute and unqualified property of the defendant Mary C. Linderson. They ask that the plaintiff's petition in these two cases be dismissed, and the property or transfers be ordered surrendered to Mary C. Linderson, and for such other and further equitable relief as may be deemed just in the premises.

The first issue made, as to the agreement that the bank should take the $1,000 in full settlement of all of its claims, has already been disposed of. The other issue tendered, is the question of whether or not Mary C. Linderson is the absolute owner of the personal property in question, and entitled to the posses-

sion thereof.

We refrain from setting out all of the evidence in this case involving this proposition, in order that the opinion may not be of unreasonable length, and only give our conclusions from the record.

Early in January, 1925, the Iowa Loan & Trust Company was pushing its claim, and Linderson was making efforts to meet the same. He was negotiating for a loan with his sister-in-law, Mrs. R. C. Davis; and on the 10th day of February, 1925, Linderson deeded both of his farms, and gave a bill of sale of all of his personal property, to Mrs. Davis, in a contemplated arrangement with her to secure the funds to take care of these claims; but after Mrs. Davis's representative looked over the properties, she was not satisfied to accept the rights she acquired under the deed and bill of sale as security, and further negotiations resulted in the making of a mortgage for $2,650 by Linderson and wife to Mrs. Davis on the former's homestead, Mrs. Davis furnishing that amount of money; and at the same time, and as a part of the same transaction, Mrs. Davis deeded back to Linderson and wife the farm which was occupied by the tenant Miller, and made a bill of sale to Mrs. Linderson of the personal property formerly conveyed to her by Linderson; and Riggs, for the Iowa Loan & Trust Company, assigned the mortgage and note of that company and all its rights under the pending attachment case to Mrs. Linderson. She testifies that she would not have signed the mortgage on the homestead, had not these various things been done. Mrs. Davis does not testify in the case. Riggs says, as to the assignment of the mortgage and note of the Iowa Loan & Trust Company to Mary C. Linderson:

*2. HUSBAND AND WIFE: conveyances: securing wife against loss on homestead mortgage.*

"I was advised at that time that, in consideration of this assignment, Mrs. Linderson was signing a mortgage on her homestead. Aside from the money received from Mrs. Davis, Linderson used about $1,000, which was furnished by a relative."

With reference to these various transactions Linderson testifies:

"I had a discussion with Mr. Riggs as to what would be done to secure my wife. She was present during the negotiations, and stated on what conditions she would be willing to consent to a mortgage, being placed on the home. She said, to turn

over to her the mortgage and an attachment to her, which they did; and the assignment thereof was made, and cause of action therein was duly assigned of record. The bill of sale from Mrs. Davis to Mary C. Linderson was delivered to my wife at about the same time, and pursuant to the same negotiations.''

At the same time, the witness executed an assignment of the leases of Burky and Miller to Mary C. Linderson, as a part of the agreement of securing her for signing the mortgage and the homestead and the borrowing of the money from her sister and the other money that was furnished by her relatives. From that time, May 7, 1925, he says, Mrs. Linderson had been getting the proceeds of the Miller farm, and whatever checks were sent by Miller to Linderson were proceeds derived from the farm, and were turned over to Mrs. Linderson, who cashed the same and kept the proceeds thereof, except that she paid interest and taxes on the farm which had been jointly deeded by Mrs. Davis to her and her husband.

Mrs. Linderson testified:

''I told them I would not sign a mortgage unless they would give me security. I have heard the testimony about these assignments of these leases and the bill of sale from R. C. Davis. They were executed about that time, and were delivered to me, and from that time I had charge of what had been Ray's interest in the two farms, and operated them to the best of my ability. I did at that time sign notes for $2,650 and mortgage securing that note to Mrs. Davis. The mortgage is still held by my sister. Aside from the aforesaid amount, my sister has advanced, since that time, the sum of $1,200 to $1,300.''

She says that her sister's representative was not satisfied with the sufficiency of the security given her by the deed and the bill of sale for the personal property of R. A. Linderson, but finally advised the making of the mortgage on the homestead ''and the bill of sale that we had already made should be returned to her,'' and she did that.

''My sister made the deed back to one of the farms to Ray and I. The purpose and object of making the deed and bill of sale to my sister in the first place was to obtain money to pay up the obligations to the Iowa Loan & Trust Company and release the attachment. That was the sole idea and purpose at that time. We had an understanding with my sister that per-

haps that could be done, if she would advance the money on that kind of security. Mrs. Davis was going to California, and it was thought it would be less trouble for her, and be all the same to me, for me to give the mortgage on the homestead. I do not know what particular money went into the Iowa Loan & Trust Company, or what particular money went to the Lockridge Savings Bank or its representative in that settlement. It was all one settlement and transaction, so far as I know. In raising these funds by giving that mortgage, it was my thought that it was all one transaction, for the purpose of settling both obligations to both banks. I would not have signed a mortgage on my homestead if I had not believed it was a full settlement, including a settlement of all liabilities to the Lockridge Savings Bank. When I gave the mortgage, I thought I was getting full value received,—just simply carrying somebody else, in place of what my share might be in the homestead.''

There is no question whatever, under this record, that the sister-in-law, Mrs. Davis, furnished the money for which the mortgage was given. There is nothing to indicate that there was any intention whatever to defraud the creditors of Linderson by these various transactions. Mrs. Linderson seems to have been very reluctant to sign away her homestead rights unless she had ample security, and she had the right to demand and accept whatever security she saw fit, in consideration of so doing. The evidence in the case shows quite conclusively that there was but little or no equity in either of these farms. The only thing of value that seems to have been involved in the transaction was the interest of Linderson in the partnership property on these two farms. At the time in question, the record shows, there were adjustments to be made between Linderson and both of his tenants, and no one knew exactly what the value of Linderson's interest was in these respective partnership properties. It developed, after these adjustments had been made and the property sold, that the total amount in value of Linderson's interest in this personal property was something over $3,400; so that the security that Mrs. Linderson took as a return for her signature to the mortgage conveying the homestead, under the circumstances, was not unreasonable.

On the other hand, this being a court of equity, which seeks to do justice between all parties, we feel that, while Mrs. Linder-

son's claimed ownership should be allowed her, it should only be allowed to the extent of the face of said mortgage of $2,650, and the balance of the money in the hands of the sheriff, we hold, is subject to the execution in these cases. The ruling of the district court will be modified in accordance with this opinion, to the extent of holding that Mrs. Linderson is entitled, out of the money in the hands of the sheriff, to the whole sum of $2,650, and that the balance thereof should be used by the sheriff to apply on the execution in question.—*Affirmed in part; reversed in part.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.