L. A. ANDREW, State Superintendent of Banking, Appellee, v. ALTA STATE BANK, Appellee; ILLINOIS CENTRAL RAILROAD COMPANY, Intervener, Appellant.

APRIL 3, 1928.

REHEARING DENIED JUNE 26, 1928.

*Mack & Young* and *Helsell, Helsell & McCall*, for appellant.

*Bailie & Edson*, for appellee.

EVANS, J.—The superintendent of banking took charge of the Alta State Bank on the morning of June 11, 1926, and closed its doors. On June 8th, the intervener (Railroad Company)· purchased and paid for a draft of $290, drawn on the Security Bank of Sioux City, to the order of the Commercial Bank of Waterloo.

On June 9th, the intervener purchased a like draft on the same drawee, and to the same order, for $760. On June 10th, it purchased a like draft for $220. None of these drafts were ever paid. It appears that the draft of June 8th was presented through the clearing house on June 11th, and was marked "paid" in the clearance. The draft of June 9th was presented through the clearing house on June 12th, and likewise was marked "paid" through the clearance. These indorsements of payment were later canceled. The third draft does not appear to have been presented, and in any event the formality would have been useless. We have had under consideration within recent years a large number of cases wherein holders of drafts against insolvent banks have sought preference on the theory of trust. In all of these cases we have held that, in the absence of

fraud, the relation between the purchaser and seller of a draft is that of creditor and debtor, and we have accordingly denied the claim of preference. Counsel for the intervener concedes that our previous holdings are adverse to him, unless his case be distinguishable in the manner pointed out by him. We shall have occasion, therefore, to consider only this point of distinction.

The intervener was not a depositor in the insolvent bank. Its draft was not purchased by the use of funds already on deposit. It carried the purchase price, in each instance, to the bank, and to that extent enriched the assets of the bank. We look to the petition of intervention for the grounds of intervener's claim. Its argument is somewhat broader in its claims than its petition. Its pleading is that the bank issued its drafts to the intervener and accepted payment therefor at a time when it was insolvent, and known by its officers to be insolvent. That the bank was in fact insolvent, was sufficiently proved. As tending to prove that the officers knew it to be insolvent, the intervener introduced evidence tending to show that, at the time of the issue of each draft, it had not sufficient funds with the drawee to meet such drafts, or either of them; that, on the contrary, its account with its Sioux City correspondent was overdrawn. This is the distinguishing fact upon which intervener relies. It is not claimed that there was actual fraud in the sale of the drafts, unless knowledge of the insolvency can be imputed, under the evidence, to the officials. There is no evidence of such knowledge except the fact of insolvency and the fact of the overdrafts.

It is conceded that, at the close of business on June 8th, the books of the Alta State Bank showed that it had overdrawn its account on the Security Bank by $211; that, at the close of business on June 9th, it had overdrawn such account by $632; that, on June 10th, it drew further drafts upon the Security Bank, amounting to $1,902, and on the same date, made remittances to the total amount of $6,183. The remittance of June 10th would, in the ordinary course, have met all drafts drawn on such bank up to such date. All the drafts purchased by the intervener were drawn payable to the Commercial Bank of Waterloo. The course of business was that each of such drafts was sent to the payee thereof at Waterloo, and was there in-

dorsed, and forwarded for payment to Sioux City. In the ordinary course of business, the draft of June 8th would, and did, reach Sioux City for the clearance of June 11th. The draft of June 9th would, and did, reach there one day later. The draft of June 10th would reach the clearance at Sioux City on June 13th. It further appears that, at the time when the draft of June 8th was actually issued, there were sufficient funds on deposit with the drawee to meet the same. The overdraft of that day was caused by the issuance of a later draft for $1,700. What legal effect should be given to the fact of overdraft, in the light of the surroundings here stated? Clearly, it did not change the legal relation of creditor and debtor. The liability of the issuing bank upon its draft to the purchaser thereof was precisely the same whether its account with the drawee was replete or was overdrawn. The fact has its significance as bearing upon the bad faith or guilty knowledge of the bank officials. If the bank officials issued these drafts knowing or believing that they would not be paid upon presentation, then a case of fraud would be presented. The deposit account of a bank with its correspondent, kept for the purpose of issuing drafts thereon, necessarily fluctuates in amount. It necessarily depends upon the amount of exchange called for by the customers of the depositing bank from day to day. If the call for exchange should be unusually large on a particular date, it would necessarily tend to exhaust the account. Such account is necessarily maintained by successive remittances of other exchange and collectible items. The mere fact, therefore, that, on a particular date, the account may be depleted or overdrawn, is not, of itself, impeaching in its significance. When it is considered herein that, following the issue of these drafts, a remittance was made on June 10th, which would reach the drawee on the morning of June 11th, and that such remittance was abundant in amount to meet all drafts that had been issued, the circumstance of temporary overdraft loses its significance as evidence tending to prove bad faith on the part of the officials. If the bank's doors had not been closed on the morning of June 11th, each draft would have been paid on presentation in due course, on June 11th, June 12th, and June 13th, respectively.

But it is pointed out by intervener that the remittance on June 10th of $6,183 was colorable only, in that two checks in-

cluded therein, and amounting to $4,800, were withdrawn from the deposit by stoppage of payment. The elimination of these checks reduced these deposits accordingly, and reduced the same to a point below the overdraft. But the stoppage of payment on these checks was caused by the closing of the doors of the bank by the superintendent of banking. In the ordinary course of business, this stoppage would not have occurred. The owners thereof had taken credit therefor as deposits at the Alta State Bank. These items had been remitted on June 10th, while the bank was a going concern. There is no claim that the bank officers knew at that time that the bank would close the following morning. It must be said, therefore, that the mere fact of the overdraft is not sufficient evidence of bad faith or knowledge on the part of the bank officials that the drafts would not be paid. No other evidence of that fact appears. The cashier, Reeder, issued the drafts of June 9th and June 10th. He was called by the intervener and interrogated as to his knowledge of the bank's condition. He testified that he did not know that the bank was insolvent. He had been in the service of the bank at that time about three months only. His claim of want of knowledge, therefore, is by no means incredible. We are of opinion, therefore, that the case is controlled by our former holdings in like cases, and that the distinction contended for by the appellant is not effective. Some of our previous cases on this subject are the following: *Andrew v. Chicago, M. & St. P. R. Co.* (Iowa), 211 N. W. 515 (not officially reported); *Leach v. Iowa State Sav. Bank of Manning*, 202 Iowa 95; *Danbury State Bank v. Leach*, 201 Iowa 321; *Border v. State Sav. Bank of Dedham*, 202 Iowa 27; *Leach v. Mechanics Sav. Bank*, 202 Iowa 899; *Leach v. Iowa State Sav. Bank of Manning* (Iowa), 211 N. W. 515 (not officially reported); *Leach v. Exchange State Bank of Stuart*, 203 Iowa 790; *Leach v. Iowa State Sav. Bank of Manning*, 202 Iowa 894; *Leach v. Battle Creek Sav. Bank*, 202 Iowa 871; *Leach v. Battle Creek Sav. Bank*, 203 Iowa 507; *Leach v. Citizens' State Bank of Arthur*, 203 Iowa 782; *Leach v. Citizens State Bank of Arthur*, 202 Iowa 879; *Leach v. Battle Creek Sav. Bank*, 202 Iowa 875; *Leach v. Plymouth County Sav. Bank* (Iowa), 212 N. W. 310 (not officially reported); *Leach v. Grinnell Sav. Bank*, 203 Iowa 235; *Leach v. City-Commercial Sav.*

*Bank*, 203 Iowa 398; *Leach v. Iowa State Sav. Bank of Sioux City*, 204 Iowa 497.

The order of the district court is, accordingly,—*Affirmed.*

STEVENS, C. J., and DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.