RObert L. Leach, State Superintendent of Banking, Appellant, v. Farmers & Merchants Savings Bank of Mount Pleasant, Appellee.

472

JUNE 26, 1928.

REHEARING DENIED JANUARY 23, 1929.

*John Fletcher,* Attorney-general, *Ben J. Gibson, F. S. Finley,* and *McCoid & McCoid,* for appellant.

*Charles L. Powell* and *R. S. Galer,* for appellee.

MORLING, J.—The principal questions raised are whether the Farmers & Merchants Savings Bank was acting as agent for  collection, or was merely acting in its own behalf, in the capacity of drawee and payer, and whether remittance by draft was in accordance with the authority and instructions given to it by claimant.

The Farmers & Merchants Bank was not a member of the Federal Reserve Bank. On January 1, 1922, the Farmers & Merchants Bank expressed to the Federal. Reserve Bank the "wish that you might send our items directly to us for collection." The Federal Reserve Bank replied:

"* * * we are writing the First National Bank of Mt. Pleasant, Iowa, whether it wishes to continue. handling checks on your bank * * * Should it decide to discontinue the practice, we shall be pleased to avail ourselves of your kind offer and forward the items direct to you for remittance on receipt at par in Chicago exchange."

On January 28, 1922, the Federal Reserve Bank further wrote to the Farmers & Merchants Bank:

"Referring further to your letter regarding the collection of checks drawn on your bank, we will forward such items direct to you for remittance on receipt at par in Chicago exchange."

The Farmers & Merchants Bank acknowledged receipt of this letter, promising prompt attention. From that time on, the Federal Reserve sent directly to the Farmers & Merchants such checks, and received remittance "approximately every business day * * * by draft on one or more of their correspondents in Chicago * * * Chicago exchange at par." The business transactions between the two institutions were confined to these checks and remittances. The "cash letter" accompanying the checks now in question (uniformly with previous ones) was in the form of a remittance letter, to be detached and returned by the sendee bank with the remittance, and instructions as follows:

"Federal Reserve Bank of Chicago
"We have received your cash letter of the date below
"amounting to $————————
"In payment
"thereof we
"Enclose our
"Chicago Exchange for $————————
"Desire That You.
"Charge our Account $————————
"Explain Corrections and Exceptions Here

"Farmers and Merchants Savings Bank
"Mt. Pleasant, Iowa.
"May 12, 1924
"By————————
"Detach and Return the Above Form as Your Letter of Advice
"We enclose herewith for collection and remittance at par
"items as listed below:
"Instructions
* * *"

Here follow instructions with reference to case of nonpayment and protest, and a list of the inclosures, some thirty in number. The checks were charged by the Farmers & Merchants Bank to the various drawers, and draft for the full amount was remitted, as has been noted. The Farmers & Merchants Savings Bank, then and up to the time it closed, had in its vaults more than enough cash to pay all the checks. It also had in the Continental & Commercial National Bank, or in transit during these times, sufficient funds available to pay the draft. The Federal Reserve Bank's petition of intervention alleges that:

"Intervener arranged with Farmers & Merchants Savings Bank, as its agent and the agent of the owners of said checks, to receive said checks for collection and remittance * * * that said checks * * * were charged to the respective drawers thereof, and thereupon and thereby there came into the hands of Farmers & Merchants Savings Bank of Mt. Pleasant, Iowa, of the moneys of this intervener, as agent for the owners of said checks, the amount of $4,646.08, and that thereupon, said Farmers & Merchants Savings Bank of Mt. Pleasant, Iowa, in recognition of its

obligation to promptly transmit said money so held for this intervener, sent to this intervener its draft [describing it] as and for a remittance on account of said checks so sent to the defendant for collection and remittance. * * * That all of said items or checks sent * * * came into the hands of the said Farmers & Merchants Savings Bank as agent for this intervener.''

It is alleged that the Farmers & Merchants Bank had on deposit with the Continental & Commercial a sum in excess of the amount of the draft, ''and the mailing of said draft to this intervener was an appropriation of said fund *pro tanto* to the discharge of the liability of said Farmers & Merchants Savings Bank as agents of this intervener, and constituted an assignment *pro tanto* of said fund.'' The prayer is that the claim be established, and the receiver ordered to make payment as a preferred claim ''especially out of the proceeds of any money that he [receiver] may have received from the Continental & Commercial National Bank of Chicago as a balance in the hands of that bank at the time of the appointment of the receiver.''

Intervener's main contention, in substance, is that the Farmers & Merchants Savings Bank became intervener's agent for the collection of the checks, and, under the doctrine of *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608, *Leach v. Farmers Sav. Bank of Hamburg*, 204 Iowa 1083, and *Andrew v. State Bank of Dexter*, 204 Iowa 565, must be held to have appropriated to the payment of these checks cash in its vaults sufficient therefor, and must, therefore, be held to have been holding, at the time it closed, that amount in trust for claimant; and that the doctrine of *Leach v. Citizens' State Bank of Arthur*, 203 Iowa 782, has been repudiated by the *Hamburg* and *Dexter* bank cases just cited.

In the case before us, the items sent to the insolvent bank were merely checks drawn on that bank. The Federal Reserve Bank was the holder of checks on the Farmers & Merchants Bank, which it was the duty assumed by the Farmers & Merchants Bank to its depositors, to pay. The liability of the several makers of the checks was the liability of drawer of the particular check. The drawer of the check had by the check agreed that the Farmers & Merchants Bank would pay that check to the proper holder. The Federal Reserve Bank was

such proper holder, and presented the check for payment accordingly. The duty of the Farmers & Merchants Bank, under such presentment, was only to pay the checks through the mail, and this it was authorized to do by draft. In the *Messenger* case (193 Iowa 608), the claimant for preference was not the holder of a check, but the drawer of a sight draft, with bill of lading attached, which it sent to the insolvent bank, with instructions to surrender upon "payment," and to "remit the full amount of the draft to us." The drawee of the sight draft was not entitled to it until he made actual payment in cash, and the sendee bank had authority only to receive and remit cash. The drawee of the sight draft gave in payment thereof to the collecting bank its check on the collecting bank against an account of sufficient amount, and the collecting bank made remittance in Chicago exchange. As the collecting bank had no authority to receive in payment of the draft anything but cash, and as the drawee of the sight draft had a sufficient balance for the payment of the check, and as the collecting bank had sufficient cash to pay the check, the operation was held to be the equivalent of the payment of the cash over the counter and the return and payment of such cash to the collecting bank on the sight draft. The amount so paid became a trust fund, and the collecting bank had no authority to discharge the trust by forwarding a draft. The facts in *Andrew v. State Bank of Dexter*, 204 Iowa 565, were substantially the same. Neither case involved the mere sending of a check drawn on the sendee bank itself, as did *Leach v. Citizens' State Bank of Arthur*, 203 Iowa 782.

Under the doctrine of *Leach v. Citizens' State Bank of Arthur*, 203 Iowa 782, and *Leach v. Burton & Company State Bank*, 205 Iowa 973, no relationship of trust or agency was created by the transaction here under review. Therefore, the question whether the assets of the bank were increased thereby is not presented, and the *Carroll, Hamburg,* and *Dexter* bank cases (193 Iowa 608, 204 Iowa 1083, and 204 Iowa 565), supra, are not in point. The case is controlled by the *Arthur* (203 Iowa 782) and *Burton & Company State Bank* (205 Iowa 973) cases.

Furthermore, on the record before us, it must be held that the insolvent bank was authorized to remit by draft. The in-

 solvent bank is, therefore, liable to claimant as the drawer of a check, and was not a trustee for claimant for claimant's funds in its possession. *Andrew v. Alta State Bank,* 206 Iowa 65, and cases there cited.

Claimant urges that it had "no power to become a creditor of a non-member bank. Its relations as debtor and creditor are confined to member banks." Claimant's proof, however, is that  it held and presented these checks, and it files this claim merely as agent for the actual owners, presumably its members, for whom it makes collections. That claimant's principals had not power to become such creditors cannot be presumed. Moreover, it obviously cannot be held that a Federal Reserve Bank has no authority to accept and own a draft or check or to assume the relationship of a creditor resulting from such acceptance.

It is argued that the receiver filed no objections to the allowance of the claim. The receiver is merely the arm or representative of the court. The claim (or petition of intervention) is addressed to the court. The claimant is under the necessity of establishing that the funds in the possession of and in process of administration by the court are funds not belonging to the trust estate, but belonging to claimant, to delivery of which it is entitled. *Andrew v. Eddyville Sav. Bank,* 204 Iowa 431; *Leach v. Iowa State Sav. Bank,* 204 Iowa 497. The receiver had no authority to waive the rights of those interested in the estate, or any legal defense to the claim. *Schubert v. Andrew,* 205 Iowa 353; *Sherman v. Linderson,* 204 Iowa 532; *Baxter v. Baxter,* 204 Iowa 1321; 34 Cyc. 344. There is no statutory or other requirement that the receiver file formal objections to the preference claimed.

Claimant contends that, in any event, it should be allowed a depositor's claim on the theory of subrogation to the rights of the drawers of the checks. The drawers are not parties. There  is neither pleading nor proof as to the names of the drawers of the checks, the condition of their accounts, their equities against the insolvent, the equities between them and the holders of the check or the other creditors. Other questions being waived,

there is manifestly no basis for the allowance to claimant of a depositor's claim by subrogation. See 37 Cyc. 363, 390.— *Reversed.*

STEVENS, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.